No. 36,760

THE STATE OF KANSAS ex rel. A. B. MITCHELL, Attorney General (EDWARD F. ARN, substituted), *Plaintiff*, THE STATE HIGHWAY COMMISSION OF KANSAS, *Defendant*.

(182 P. 2d 127)

Opinion filed June 7, 1947.

*A. B. Mitchell,* of Topeka, argued the cause, and *C. H. Hobart* and *Harold R. Fatzer,* assistant attorneys general, were with him on the briefs for the plaintiff.

*Charles C. Clark* and *A. J. Anderson,* attorneys for the highway commission, argued the cause, and *Stanley Taylor,* attorney for the highway commission, was with them on the briefs for the defendant.

The opinion of the court was delivered by

WEDELL, J.: This is an original action in quo warranto by the state of Kansas, on the relation of the attorney general, against defendant, the State Highway Commission, to require it to show by

what authority it attempts to sell real estate acquired by eminent domain for highway purposes, when the commission determines part of the land so acquired is no longer needed or used for highway purposes.

The pleadings consist of a petition and verified answer. Plaintiff asks for judgment on the pleadings. A sketch of the land involved and the essential surrounding physical facts is included to help clarify the pleadings.

The material portions of the petition, in substance, are: Defendant is authorized to exercise the right of eminent domain as provided in G. S. 1935, ch. 26, art. 1; defendant exercised such right in connection with the relocation of U. S. highway 50S in Johnson county and the construction of a four-lane highway; many parcels of land and lots were condemned in a proceeding in the district court of Johnson county including lots 20 and 21 in block 7, etc. (giving full legal description); the petition in the condemnation proceeding alleged defendant sought to acquire the two lots in question, and others, in the name of the state for the purpose of establishing, maintaining, improving and draining the state highway system; the district court found the allegations were true; the land was appraised as provided by law; only a small area of lots 20 and 21 was actually used for right of way purposes (the portion of those lots used is the triangular portion designated on the attached map); in condemning other lots in that proceeding for the same purpose defendant acquired a house known as the Hammer House, which was located directly within the right of way for the relocation of the highway; defendant is about to move the house onto lots 20 and 21 and sell the same as one piece of land for private use; defendant advertised the sale of the house stating in the notice of sale the purchaser thereof would be given an option to purchase lots 20 and 21 for the sum of $2,000 and that defendant would convey its title or interest by quitclaim deed; defendant will sell the land unless the court ousts it from usurping its power to do so; defendant's offer and attempt to sell the lands constitute a finding, a determination by it, that said lots are not necessary for the public use for which they were acquired and that no use or need therefor exists at this time for highway purposes; defendant is without authority of law to sell the same or to give title thereto to a private person; the action of defendant constitutes an abandonment of that part of the right of way and under the provisions of G. S. 1945

Supp. 68-413 title to the land has reverted to the owners of the land of which it was a part; in the condemnation proceedings no compensation was made for minerals in place or other subsurface rights in the land and defendant cannot give a merchantable title thereto under the provisions of G. S. 1945 Supp. 68-413 and the provisions of article 11, section 9 of our state constitution.

In its answer defendant denies plaintiff's conclusions of law but admits generally the allegations of fact set forth in the petition except as modified or explained in the answer.

The material portions of the answer, in substance, are: The description of the land set forth in the petition is the land defendant is attempting to sell; lot 20 was owned by Ellen Roe Bryant; Bryant owned other lots which it was necessary to acquire for highway purposes; the highway improvement actually utilized more than one-half of lot 20 and the remainder thereof was too small for a building site and of no substantial value to the landowner; under the plat dedication of Bryantwood subdivision and the township planning board no building permit could be granted on the small remnant of lot 20; under the rule for assessment of compensation and damages relating to eminent domain Bryant would be entitled to receive the full value of the lot; lot 21 was owned by Charles H. Greisa; the highway improvement actually occupies a large portion of that lot and the remaining portion was likewise too small for a building site and was not contiguous to any other land owned by Greisa; defendant attempted to trade to Greisa that part of lot 20 not needed for highway purposes for that part of lot 21 which was required for construction of the highway; Greisa refused to make such exchange and insisted that he be paid for all of lot 21; lots 20 and 21 were appraised in their entirety in the condemnation proceedings and Bryant accepted the appraisal value of lot 20 at $1,317.60 in full payment of that lot; Greisa accepted the appraisal value of lot 21 at $1,443.01 as full payment for that lot; the remnants of the two lots constitute a valuable building site for the location of a home; prior to the appraisal and in order to mitigate defendant's damages it sought to acquire the land on which the Hammer House was located and to move the Hammer House onto lots 20 and 21; a tentative agreement with Hammer to that end failed and Hammer insisted on full compensation for the land on which his house stands; defendant did offer the Hammer House and the lots mentioned for sale as stated by plaintiff but by reason

of doubt as to the validity of the title defendant could convey no purchaser of the lots was obtained; defendant admits it has a plan whereby it proposes to move the Hammer House onto that portion of the lot not occupied by it and to offer the house and lots for sale to the highest bidder; that such project would be readily salable for the sum of $25,000, which would result in a saving to the state of approximately $15,000, but that doubt exists as to its authority to do so; an actual controversy exists and defendant seeks to have the question of its title determined under the declaratory judgment law; defendant has authority to make such sale under the provisions of G. S. 1945 Supp. 68-413; defendant in all probability could use the land for other purposes but to hold that the property reverted to the former owners would constitute an unjust enrichment of such owners since they have received and accepted full compensation for their lots; there exists an actual justiciable controversy between plaintiff and defendant and others which justifies defendant's invoking the declaratory judgment law (G. S. 1935, 60-3127 *et seq.*) in order to obtain an authoritative and binding adjudication of the rights of defendant in the premises.

We shall refer to the parties as the state and the commission. Since the oral argument we have been frankly and commendably informed by stipulation of counsel for the parties that the house in question has been sold separately and will not be moved onto any portion of lots 20 and 21 and sold as a part thereof. That particular factual situation, therefore, passes out of the lawsuit. Manifestly, we shall not consider the matter of moving the house onto the lots and selling the entire property as a residence in connection with any constitutional question that such facts, if existing, might have raised. In order to obtain an adjudication of any question of law under the declaratory judgment act an actual controversy must exist. (G. S. 1935, 60-3127; *Kittredge v. Boyd,* 137 Kan. 241, 242, 20 P. 2d 811; *Klein v. Bredehoft,* 147 Kan. 71, 73, 75 P. 2d 232; *City of Cherryvale v. Wilson,* 153 Kan. 505, 509, 112 P. 2d 111.) When any legal questions become moot, judicial action ceases. (*State, ex rel., v. Insurance Co.,* 88 Kan. 9, 10, 127 Pac. 761; *State.v. Allen,* 107 Kan. 407, 408, 191 Pac. 476.) *A fortiori,* courts manifestly will not determine an unnecessary or hypothetical constitutional question. (*City of Cincinnati v. Vester,* 33 F. 2d 242, 68 A. L. R. 831; affirmed in 281 U. S. 439, 74 L. Ed. 950.)

The first question remaining is whether the commission has a right

to sell the so-called excess or surplus portion of the two lots under the provisions of the special state highway condemnation statute, G. S. 1945 Supp. 68-413, which was enacted in 1929. Except for slight amendments, not presently involved, the statute remains as originally enacted. It reads:

"That the state highway commission, in the name of the state, *may acquire title* by purchase or dedication *or by the exercise of the right of eminent domain, to any lands or interest or rights therein,* to water, gravel, stone, sand or other material, or to spoil banks or to borrow pits necessary for the construction, improvement, reconstruction, maintenance or drainage of the state highway system, or to rights of way giving access to spoil banks or borrow pits or any bed, pit, quarry or other place where gravel, stone, water or other material *required in the construction, improvement, reconstruction, maintenance or drainage of the state highways may be located.* The right of eminent domain when exercised as herein provided shall be in accordance with the provisions of article 1, chapter 26 of the General Statutes of 1935 and any amendments thereto, and in addition to the notice required therein all lienholders of record of the condemned land must also be notified. *The state highway commission may dispose of any real estate, or any right, title or degree or variety of interest therein as it may deem expedient or necessary whenever the commission determines that such real estate, or interest therein, is no longer needed or used for highway purposes, and may exchange the right of way to be abandoned for new and other right of way:* Provided, That when any road on the state highway system is vacated, the lands or interests or rights therein acquired by the state highway commission for right of way under the provisions of this section, *unless disposed of as above provided,* shall revert to the present owners of the land of which it was originally a part." (Emphasis supplied.)

The pertinent portion of G. S. 1935, 26-101, provides:

"Any corporation having the right of eminent domain, except railroad and interurban railway corporations, shall exercise such right in the following manner: Whenever such corporation desires to acquire land for a lawful purpose, it shall present to the district court of the county wherein the land is situated, or to the judge thereof, a petition setting forth the purpose for which the land is sought to be acquired, a description of each lot and parcel of ground and the name of the owner of each lot and parcel of ground as shown by the records of such county. The court or the judge thereof shall examine said petition and determine whether the petitioner has the power of eminent domain *and whether said lands are necessary to its lawful corporate purposes,* and if found in the affirmative, such findings shall be entered in the record and the court thereupon shall appoint three disinterested householders of said county to view and appraise such lots and parcels of ground.. Such appraisers shall take an oath to well and truthfully make such appraisal and shall report their appraisement of each tract in writing, under oath, to the said court or judge thereof, and the same shall be filed with the clerk of the district court.

"If the petitioner desires to acquire the land at the appraised price it shall within thirty days deposit with the clerk of the district court the total amount of such appraisement, shall pay the court's costs and the fees of the appraisers, to be fixed by the court or the judge thereof, *and the title to all such lots and parcels of ground thereupon shall immediately vest* in the said petitioner, and the said petitioner shall be entitled to the immediate possession thereof and all remedies provided by law for the security of such title and possession." (Emphasis supplied.)

The state, in substance, contends: (1) The statute provides only for the taking of land necessary for statutory designated purposes (the state concedes lots 20 and 21, as described for sale, were acquired for highway purposes) ; (2) condemnation statutes are strictly construed and no greater quantum or title is acquired than the statute provides, and in the absence of express terms or necessary implication only a fee simple determinable, or an easement for the intended use, is acquired and not a fee (18 Am. Jur., Eminent Domain, §§ 114, 115) ; (3) under the statute only an easement was acquired to land necessary for highway purposes; (4) no minerals in place, if any, were acquired or compensated for by the commission in the condemnation proceedings; (5) to interpret the statute as granting a fee title which the commission may convey to a private party would violate section 9, article 11, of our state constitution which denies the state the right to carry on any work of internal improvement except that it may adopt, construct, reconstruct and maintain a state system of highways; and (6) the provision giving the commission the right to dispose of any real estate, right, title or interest therein as it may deem expedient or necessary, when the commission determines such real estate or interest therein is no longer needed or used for highway purposes, was only intended to permit the commission to convey back to persons of record in the condemnation proceedings such title, rights or interest in the lands as were condemned for borrow pits or spoil banks, etc., after they had served their purpose. It is urged such provision was made in order to enable landowners to pass a merchantable title to their lands.

It should be stated the state concedes the right of the commission to exercise its discretion, in good faith, with respect to what amount of land is reasonably necessary for the purposes designated in the statute, including future needs and a reasonably sightly appearance of the highway. (*State Highway Comm. v. Ford,* 142 Kan. 383, 46 P. 2d 849.) At the outset it should be clearly stated

the district court was duty bound, in the condemnation proceedings, to determine whether all of lots 20 and 21 was necessary for the lawful purpose of the highway. Until it so determined it could not proceed to condemn them in their entirety. (G. S. 1935, 26-101.) The state concedes it was judicially adjudicated they were necessary for the public purpose intended.

The commission contends it was the legislative intent the state should acquire by condemnation proceedings only a fee simple determinable or an easement with respect to land actually needed for the right of way itself, but that it was intended a fee title should be acquired to additional land taken which the commission later determines is no longer needed or used for highway purposes.

Touching the first part of the commission's contention it will be observed that immediately prior to the proviso the statute grants to the commission, among other things, the right to exchange a right of way which is to be abandoned for a new and other right of way. The commission, in substance, argues: The proviso refers only to the right of way for a road; it refers to the right to dispose *of it as above mentioned;* the legislature intended the state should obtain only a fee determinable or easement in the right of way proper for the use intended; such intention is disclosed by the terms in the proviso that where the right of way is not disposed of as above provided (that is by exchange of right of ways) and the road is vacated it shall revert to the present owner of the land of which it was originally a part.

It will be observed the right of the commission to exchange one right of way for another is not the only right granted by that portion of the statute immediately preceding the proviso. In the same preceding sentence provision is made for other disposition of land and rights to be mentioned presently. Such disposition may be made whenever the commission determines that such real estate, or interest therein, is no longer needed or used for highway purposes. Such disposition is being attempted now and before the road has been vacated. It follows the possibility of a reverter mentioned in the proviso is inoperative in the instant case. Moreover, the proviso itself expressly authorizes such disposition prior to vacating the road. It also follows that, in this case, there could be no reverter to present owners of the land of which the lots were originally a part.

With respect to the commission's claim that the state acquired a fee title to additional lands taken by the condemnation proceedings the commission relies upon the italicized provisions of G. S. 1945

Supp. 68-413 pertaining to the right to acquire title to lands or interest or rights therein and to dispose of the same.

We are unable to find appropriate language in the statute to justify the commission's contention a fee title was intended as to excess land taken and only an easement as to land actually needed for the right of way itself. Under this special highway statute provision is made only for the taking of land by eminent domain required for the purposes designated therein. In this action we cannot determine what quantum of land was necessary. The district court was obliged to determine that fact in the condemnation proceedings. (G. S. 1935, 26-101.) That fact has been adjudicated. No appeal was taken from that decision and it.is now a finality. The result is we will not, in this action, pass upon the question whether the commission may by eminent domain knowingly acquire more land than is needed and thereafter sell it for private use for the purpose of recouping the expense of acquiring a right of way.

The parties concede our constitution places no limitation or restriction on the nature of the title to property which may be acquired by eminent domain. (*Challiss v. A. T. & Santa Fe Rld. Co.,* 16 Kan. 117.) The legislature, therefore, has power to determine the nature of the title to be so acquired. The general rule is that eminent domain statutes will be construed to authorize only the taking of an easement or title sufficient for the public use intended and that the fee will not be condemned unless the statute clearly so provides, either expressly or by necessary implication. (18 Am. Jur., Eminent Domain, §§ 114, 115; 30 C. J. S., Eminent Domain, § 450.) With these stated principles conceded we proceed. Counsel for both parties refer to statements made in the course of various opinions of this court with respect to the title acquired by the exercise of eminent domain and by deeds to land for public purposes. We think it would serve no useful purpose to extend this opinion over many pages by a review of those decisions. We shall, however, pause to comment briefly concerning the case of *State Highway Comm. v. Puskarich,* 148 Kan. 388, 83 P. 2d 132, upon which the state so strongly relies. Notwithstanding what was said in the opinion in that case this court believes that it was unnecessary to determine in that case whether the commission actually owned a fee or merely an easement in order to decide the narrow question there presented.

The instant action is really the first time the proper interpretation of the statute, insofar as it bears on the question of title, has

been directly presented to this court for decision. This statement is not disputed by the state and is conceded by the commission.

We shall, therefore, turn immediately to a further consideration of the statute for the purpose of determining the legislative intent. It is true the statute does not expressly define the nature of the interest in the land the condemnor acquires. Does the language of the statute necessarily imply it was intended the condemnor should acquire the fee in land necessary for the purposes designated in the statute? What is meant by the language employed in G. S. 1945 Supp. 68-413, to wit: ". . . the state highway commission . . . *may acquire title* . . . *to any lands or interest or rights therein* . . . necessary for the construction, improvement, reconstruction, maintenance or drainage of the state highway system," etc., and by the provision—

"The state highway commission *may dispose of any real estate, or any right, title or degree or variety of interest therein* as it may deem expedient or necessary whenever the commission determines that such real estate, or interest therein, is no longer needed or used for highway purposes, and may exchange the right of way to be abandoned for new and other right of way, . . ."

and by the proviso, to wit:

"That when any road on the state highway system is vacated, the lands or interest or rights therein acquired by the state highway commission for right of way under the provisions of this section, *unless disposed of as above provided,* shall revert to the present owners of the land of which it was originally a part." (Our emphasis.)

No other condemnation statute in this state contains such broad and sweeping terms. It is observed the statute provides the commission may acquire title to *any* lands, or interest or rights therein, etc. It likewise provides the commission may dispose of *any* real estate, or *any* right, or *any* title, or *any* degree or *any* variety of interest therein. That means the commission may sell, assign or convey in any manner the whole interest in the land acquired or any portion thereof less than the whole title. How could it do so if it possessed only an easement? It seems to us wholly illogical to assume the legislature authorized the commission to sell something to which it never acquired title. Furthermore, the proviso, the concluding sentence of the statute, expressly negatives the ordinary theory of reverter of title to the landowner. It clearly provides that if the road is vacated the "lands or interests or rights therein acquired . . . for right of way" revert *"unless disposed of as above provided. . . ."* (Emphasis supplied.)

It is, of course, true that where language of a statute will bear the construction that only an easement was intended courts as a general rule seem disposed to leave the fee in the landowner. (18 Am. Jur., Eminent Domain, § 114.) We think the instant statute does not permit the latter construction. Under a similar statute, it was held in *Jones v. Oklahoma City*, 192 Okla. 470, 137 P. 2d 233, a railroad had acquired a fee simple title in a right of way and could convey a fee title thereto. The court said:

"The power to sell when no longer required for railroad uses is wholly inconsistent with the idea that only an easement was intended. It is difficult to understand why the power should be granted to sell, unless the Legislature intended to give the power to acquire some right, title, or interest that could be sold." (p. 473.)

The highway statute also provides the right of eminent domain, when exercised as therein provided, shall be in accordance with the provisions of article 1, chapter 26. (G. S. 1935, 26-101.) The latter statute provides that after the petitioner has complied with its requirements "the title to all such lots and parcels of ground thereupon shall immediately vest in the said petitioner. . . ." Just now we are concerned only with what that language was intended to mean when construed in conjunction with the provisions of G. S. 1945 Supp. 68-413. We are compelled to assume the legislature intended the two statutes should be in harmony insofar as title to land the commission acquired was concerned. We are not now dealing with the question of what title some other condemnor might acquire when proceeding solely under the provisions of the general condemnation statute, G. S. 1935, 26-101, and express no opinion thereon.

We recognize that with respect to the title acquired for park purposes a somewhat different rule has been applied at times from that which obtains with respect to streets and highways. (18 Am. Jur., Eminent Domain, § 116.) The legislative will must, however, always be determined from the language employed in controlling statutes. In 1928 this court had occasion in *Skelly Oil Co. v. Kelly*, 134 Kan. 176, 5 P. 2d 823, to interpret a park condemnation statute which provided for the vesting of title. It was there said:

"What is meant by the expression, 'The title . . . shall vest in such city'?

"The word title has a variety of meanings. It sometimes connotes the means by which property in land is established, as in the expression 'chain of title.' It sometimes means 'property' or 'ownership' in the sense of the interest one

has in land. A common meaning is complete ownership, in the sense of all the rights, privileges, powers and immunities an owner may have with respect to land. (Am. Law Inst., Restatement of the Law of Property, draft No. 1; introduction.)

"Plainly the word title as used in R. S. 26-204 does not have the meaning first indicated. The record of the steps pursued in perfecting condemnation constitutes the means of establishing the city's title, and it is the interest which the city acquired by the condemnation proceedings which vests. Therefore the word title indicates ownership, and unquestionably the usual and ordinary signification of the word when used alone in the sense of ownership is ownership in fee.

"It will be observed that R. S. 26-201 relates to condemnation for specified purposes, and then to condemnation 'for any purpose whatsoever,' but condemnation for parks, parkways and boulevards is not specified. There is no provision in the statute for vesting of title except in case of condemnation for parks, parkways and boulevards. All other condemnations are governed by the provision that on recording of the copy of the condemnation report in the office of the register of deeds, the right to possession shall vest, and the city may forthwith take possession and use, occupy and improve for the purpose specified in the resolution. The statute would have been effective to vest right to possess, occupy, use and improve without making special reference to parks, parkways and boulevards, and without making special reference to vesting of title. The legislature, however, deemed it important to insert a special provision relating to vesting of title in case of condemnation for parks, parkways and boulevards. This vesting of title is unqualified. The provision is not that on publication of the condemnation resolution title shall vest for park, parkway and boulevard purposes. The provision is that, when land is condemned for parks, parkways and boulevards, title shall vest on publication of the resolution. There is no connotation that title shall vest while, or so long as, the land is used for park purposes, and the court holds that in this instance the city acquired a fee simple, without so-called possibility of reverter to former owners." (p. 179.)

For definition of "title" see, also, Webster's International Dictionary, 2d ed; Century Dictionary; and Ballentine's Law Dictionary.

The state directs attention to the fact the opinion in the Skelly Oil Company case also states that in highway, right of way, and some other cases the owner is not deprived of all interest but merely to the extent necessary for the particular use. The decision rendered in 1928 does so state. That, however, was prior to the 1929 enactment of the present highway statute now under scrutiny. In view of the language employed in the special 1929 highway statute it would do violence to the legislature to assume it was not cognizant of what was said in the Skelly Oil Co. case with respect to

a fee title which might be acquired under suitable terms of an eminent domain statute.

In *Kucera v. State Highway Comm.*, 145 Kan. 121, 64 P. 2d 66, involving this same statute, the court held:

"Where a petition alleges that the state highway commission contracted, in connection with the purchase of a new right of way over plaintiff's land, to deed back 'unconditionally' the vacated highway, but later gave a quitclaim deed, failing and refusing to have the pipe lines and pole lines located thereon removed therefrom, it is held: (1) that the making of such a contract was within the power and authority of the highway commission; and (2) that the conveyance of the old right of way without such removal was not a deeding back unconditionally." (Syl.)

In the course of the opinion it was·said:

"Under these provisions there would seem to be ample authority in the highway commission to dispose of the old right of way and to arrange to do so by contract in connection with the acquiring from the owner of the same tract of land the right of way for the new road. In making the contract for this exchange of tracts of lands the appellant promised to deed back unconditionally the old right of way.

"Webster defines the word 'unconditional' as 'not conditional, limited or conditioned; made without conditions; absolute, unreserved.' Bouvier's Law Dictionary defines 'unconditional ownership' as follows: 'When the quality of the estate is not limited or affected by any condition.'

"65 C. J. 1200 defines it as synonymous with 'absolute.'

"The giving of a quitclaim deed by the appellant to the appellee wholly ignores the meaning and use of this special word used in the contract. To give this specifically chosen word used in the contract any reasonable meaning or application whatever in construing the contract we cannot avoid holding that the land conveyed was not to be subject to any burden or encumbrance. These burdens would make the conveyance conditional and not absolute.

"We conclude that the appellant had statutory authority to make the contract it did make and under the allegations of the petition it failed to carry out or comply with the terms of such contract." (p. 124.)

We are quite properly reminded the question whether the state acquired a fee title is burdened with far-reaching consequences. We agree. What the views of members of this court may be upon that subject is wholly immaterial. It is not the province or right of courts to determine the wisdom of legislation touching the public interest. That is solely a legislative prerogative with which courts cannot interfere. It is our duty to ascertain and, if possible, to make effective the legislative will. (*Dunn v. Jones,* 143 Kan. 771, 57 P. 2d 16; *Hunt v. Eddy,* 150 Kan. 1, 4, 90 P. 2d 747; *State v. Momb,* 154 Kan. 435, 119 P. 2d 544.)

Having determined the commission, in the name of the state, ac-

quired a fee title to all of lots 20 and 21 as described in the notice of sale, subject to its termination as provided by the statute, the fee including minerals in place, if any, could be conveyed prior to its statutory termination.

The state finally contends if the statute is interpreted to mean the state acquired a fee title to the land the statute violates section 9, article 11, of our state constitution, which denies the state the right to carry on any work of internal improvement, except to adopt, construct, reconstruct and maintain a state system of highways. We repeat it was judicially determined by the district court in the condemnation proceeding, instituted by the commission in the name of the state, that all of lots 20 and 21, here involved, was necessary for highway purposes. The adjudicated fact that all the land here involved was necessary for the public purpose intended is a finality and cannot now be challenged in this litigation. We are therefore obliged to determine the question of the constitutionality of the sale of the remnants, or surplus, on the basis the condemnation judgment was correct. It follows the question whether the commission by the process of eminent domain may knowingly acquire more land than is actually needed, under a statute which permits it to acquire only land necessary for its corporate purpose, and thereafter sell a portion of the acquired land for the purpose of recouping, or reducing, the cost of acquiring the necessary land, is not now before us. The statute authorizes the sale of real estate whenever the commission determines it, or any interest therein, is no longer needed or used for highway purposes. The mere sale of the remnants of these lots does not under the circumstances stated, in our opinion, constitute the carrying on of a work of internal improvement.

The motion of the state for judgment on the pleadings, as modified by the stipulation of the parties, is denied. It follows the state's application for the writ must likewise be and is denied.

Hoch, J., not participating.

Harvey, C. J. (limited concurrence): As I read the pleadings in this action, as they are modified by the stipulation of the parties, there is presented for our decision a relatively simple question, which may be stated as follows: When the state highway commission has rightfully condemned real property for highway purposes and later finds that a part of the real property so condemned is no

longer needed for highway purposes may it sell the property no longer needed and give good title to it? The affirmative answer to the question is found in our statute (G. S. 1945 Supp. 68-413).

SMITH, J. (dissenting): I dissent from paragraph 5 of the syllabus and the corresponding part of the opinion. Briefly my views are that the highway commission does not need anything but an easement and the legislature never intended for it to take any more than it needed. I could elaborate more fully upon this but lack the time.