No. 40,335

In the Matter of the Condemnation of Land for Kansas Turnpike Project. ORA ETHEL MOORE, *Appellee* and *Cross-Appellant*, v. KANSAS TURNPIKE AUTHORITY, *Appellant* and *Cross-Appellee*.

(310 P. 2d 199)

Opinion filed April 6, 1957.

*Alex Hotchkiss,* of Lyndon, argued the cause and *Robert M. Cowger,* of Topeka, was with him on the briefs for the appellant and cross-appellee.

*Ward D. Martin,* of Topeka, argued the cause and *A. Harry Crane, Arthur L. Claussen,* and *Harvey D. Ashworth,* all of Topeka, were with him on the briefs for the appellee and cross-appellant.

The opinion of the court was delivered by

HALL, J.: This is a condemnation appeal.

The Kansas Turnpike Authority instituted an eminent domain proceeding by virtue of its authority under the provisions of G. S. 1949, 26-102, *et seq.,* as authorized by G. S. 1955 Supp., 68-2006. The proceeding involved several tracts of land including the three tracts in this appeal.

The three tracts of land involved in this appeal were owned by the appellee Ora Ethel Moore, subject to a lease to Perry Jones for the production of limestone products and road rock and the farm tenancy of Raymond G. Briggs. The entire unit contained 160 acres from which the condemnation by the appellant Kansas Turnpike Authority amounted to a taking of 14.73 acres.

Appraisers were appointed by the district court who made their report of appraisement.

Thereafter, and within the time provided by statute, Ora Ethel Moore and Perry Jones each filed separate notices of appeal. Like-

wise, the Kansas Turnpike Authority filed its separate notice of appeal. No other appeals were taken by any other party.

In due course, the district court notified the Kansas Turnpike Authority and Ora Ethel Moore that the Ora Ethel Moore appeal was set for trial on January 12, 1956. No mention was made concerning the Perry Jones appeal.

The Kansas Turnpike Authority then filed a motion for an order assigning for trial its appeal in its entirety and assigning as a single action the question of the sufficiency of the award including the issues raised both by Ora Ethel Moore and Perry Jones in their appeals. In other words, the Kansas Turnpike Authority moved to consolidate as a matter of law, and not discretion, the Moore and Jones appeals into one trial.

The motion was heard and overruled by the court. The court made the following order.

"It Is, Therefore, Considered, Ordered and Adjudged by the Court that the appeal of Kansas Turnpike Authority be tried at the same time as the appeal of Ora Ethel Moore and that the appeal of Perry Jones be heard separately."

The case was tried to a jury with Ora Ethel Moore and the Kansas Turnpike Authority as the only parties to the suit. At the conclusion of the trial the jury returned a verdict in favor of the appellee Ora Ethel Moore for the sum of $4,015.22, being $1,473.00 for the land taken and $2,532.22 for damage to the remainder. The Kansas Turnpike Authority filed a motion for new trial assigning as particular error the order of the court overruling its motion for trial of the action on its appeal in its entirety. The motion for new trial was overruled. Appeal was then taken to this court.

Appellant makes three specification of errors but in his brief and oral argument stated:

"The sole question involved is 'Does an appeal to the District Court from an appraisement in an eminent domain proceeding bring to the District Court in its entirety the question of the sufficiency of the award to be tried in a single action as to all of the parties?' "

Appellee and cross appellant agree that this is the question involved in appellant's appeal but raise this additional question on cross appeal:

"On the cross appeal of Ora Ethel Moore: Did the Court erroneously limit the cross examination of the court appointed appraisers where they testified to different values at the trial?"

Appellant urges this court to declare as a matter of substantive

law that under the provisions of the eminent domain statutes (G. S. 1949, 26-101, *et seq.*, as amended by G. S. 1955 Supp., 26-102) an appeal to the district court brings to that court a single action to be tried as such, without separating such action into as many separate actions as there are parties interested in the particular tract involved in the appeal.

In support of his position appellant cites the following authorities: *Bogart v. United States,* 169 F. 2d 210; *Carlock v. United States,* 53 F. 2d 926; *City of St. Louis v. Rossi,* 333 Mo. 1092, 64 S. W. 2d 600; *Dye v. Railroad Co.,* 77 Kan. 488, 94 Pac. 785; *Federal Land Bank v. State Highway Comm.,* 150 Kan. 187, 92 P. 2d 72; G. S. 1949, 26-101; *K. & C. P. Rly. Co. v. Phipps,* 4 Kan. App. 252, 45 Pac. 926; *Kohl Et Al. v. United States,* 91 U. S. 367, 23 L. ed. 449; *Meadows v. United States,* 144 F. 2d 751; *Newton Trust Co. v. Commissioner of Internal Revenue,* 160 F. 2d 175; *Reiter v. State Highway Commission,* 177 Kan. 683, 281 P. 2d 1080; *State ex rel. McCaskill v. Hall,* 325 Mo. 165, 28 S. W. 2d 80, 69 A. L. R. 1256; *State Highway Commission v. Weiss,* 167 Kan. 427, 207 P. 2d 480.

The rule is also stated in 18 Am. Jur., Eminent Domain, § 316:

"Where the law secures a separate trial to 'the owner or owners of each separate parcel,' the court is not required to allow a separate trial to each owner of an estate or interest in each parcel. Thus, it is not contemplated that the lessee shall be given a trial separate and apart from the lessor."

These authorities are very persuasive. It is clear from the Kansas cases particularly the earlier ones that while this court never adopted the substantive rule of law advocated by appellant it came very close to it.

In *Federal Land Bank v. State Highway Comm.,* supra, the court said:

". . . There is nothing in that statute which indicates or leads to the conclusion that as to a particular tract of ground the petitioner might appeal as to the lienholder and not the landowner, or vice versa, or that the lienholder could appeal separately as between the petitioner and the landowner, or that the landowner could appeal separately as between the petitioner and the lienholder. The statement is that if any one of the three appeal, an action shall be docketed and tried. The statute provides its own procedure up to the point where the appeal is perfected. When that has been accomplished 'an action shall be docketed and tried the same as other actions.' We are of opinion that under the statute there is and can be no separation as between parties. Whenever an appeal is taken, either by the petitioner or by the landowner or by a lienholder, the effect is to bring to the district court in its

entirety the question of the sufficiency of the award, and the trial of that issue in the district court is conclusive on all of the parties, subject only to their right of appeal to this court. . . ."

The nature of the issue on such appeal is also referred to in a later case where this court said in *State Highway Commission v. Weiss*, supra:

"The statute (G. S. 1947 Supp. 26-102), under which that appeal was taken, provides that if the petitioner shall be dissatisfied with the appraisement he shall, within thirty days, file a written notice of appeal with the clerk of the district court, whereupon it is to be docketed and tried the same as other actions. The question to be determined in such appeal is the amount of compensation or damages, if any, to be awarded on account of the appropriation by the condemnor of the property in question. . . ."

Our Court also has stated this rule in *Dye v. Railroad Co.*, supra.

". . . Apparently the proceedings were conducted in compliance with the statute; the land thereby became vested in the railroad company, and the money awarded as damages was transferred to the owner or owners of the land taken. Any dissatisfied owner might have appealed from the award of the commissioners to the district court, where the amount of damages could have been submitted to a jury. The plaintiff in error exercised this right. In such cases the owners and all parties having an interest in the land must look to the damages, as finally allowed, for compensation, as such damages, so far as the landowners are concerned, take the place of the land appropriated. . . ." (pp. 490, 491.)

Also:

". . . It seems eminently just and proper that the rights of all parties interested in this fund should have been determined in the same proceeding, and as speedily as possible. . . ." (p. 492.)

Our Court has denied the right to show separately the value of mineral interests in *Reiter v. State Highway Commission*, supra:

"In condemnation proceedings, sand and gravel in the land are considered part of the realty and are not to be valued separate from the value of the land as a whole." (Syl. 2.)

"Where the land taken contains valuable deposits of sand, gravel or other valuable deposits, the measure of compensation is the market value of the land with the deposits in it, and the value of the minerals cannot be shown separately." (Syl. 5.)

The "single action rule" is well established in some jurisdictions. A leading case is *Kohl Et Al v. United States*, supra:

"The second assignment of error is, that the Circuit Court refused the demand of the defendants below, now plaintiffs in error, for a separate trial of the value of their estate in the property. They were lessees of one of the parcels sought to be taken, and they demanded a separate trial of the value

of their interest; but the court overruled their demand, and required that the jury should appraise the value of the lot or parcel, and that the lessees should in the same trial try the value of their leasehold estate therein. In directing the course of the trial, the court required the lessor and the lessees each separately to state the nature of their estates to the jury, the lessor to offer his testimony separately, and the lessees theirs, and then the government to answer the testimony of the lessor and the lessees; and the court instructed the jury to find and return separately the value of the estates of the lessor and the lessees. It is of this that the lessees complain. They contend, that whether the proceeding is to be treated as founded on the national right of eminent domain, or on that of the State, its consent having been given by the enactment of the State legislature of Feb. 15, 1873 (70 Ohio Laws, 36, sect. 1), it was required to conform to the practice and proceedings in the courts of the State in like cases. This requirement, it is said, was made by the act of Congress of June 1, 1872. 17 Stat. 522. But, admitting that the court was bound to conform to the practice and proceedings in the State courts in like cases, we do not perceive that any error was committed. Under the laws of Ohio, it was regular to institute a joint proceeding against all the owners of lots proposed to be taken. (Giesy v. C. W & T. R. R. Co., 4 Ohio St. 308); but the eighth section of the State statute gave 'the owner or owners of each separate parcel' the right to a separate trial. In such a case, therefore, a separate trial is the mode of proceeding in the State courts. The statute treats all the owners of a parcel as one party, and gives to them collectively a trial separate from the trial of the issues between the government and the owners of other parcels. It hath this extent; no more. The court is not required to allow a separate trial to each owner of an estate or interest in each parcel, and no consideration of justice to those owners would be subserved by it.  .  .  ." (p. 377.)

See, also, the following cases: *Bogart v. United States,* supra; *Newton Trust Co. v. Commissioner of Internal Revenue,* supra; *Carlock v. United States,* supra; *City of St. Louis v. Rossi,* supra; *Meadows v. United States,* supra; *State ex rel., McCaskill v. Hall,* supra.

The reason for the rules followed in these cases is that an eminent domain proceeding is one *in rem.* Some early Kansas cases followed that principle.

"Condemnation proceedings under the statutes are essentially proceedings *in rem,* .  .  ." (*K. & C. P. Rly. Co. v. Phipps,* 4 Kan. App. 252, Syl. 2, 45 Pac. 926.)

While the decisions of this court in the past have indicated a proximity to follow the "single action rule" it has not actually done so and its recent decisions are in the other direction following an equally respectable line of authority.

The Kansas condemnation statute may also be distinguished

from some jurisdictions following the "single action rule." G. S. 1949, 26-101, *et seq.*, as amended by G. S. 1955 Supp., 26-102 provides as follows:

"If the petitioner *or* the owner *or* any lien holder of record of any lot or parcel of ground so condemned shall be dissatisfied with the appraisement thereof, he shall, within thirty days, file a written notice of appeal with the clerk of said court and give bond for the costs thereof, to be approved by said clerk, and thereupon an action shall be docketed and tried the same as other actions: . . ." (Emphasis ours.)

The use of the disjunctive in the foregoing statute indicates the legislative intent that each owner of an interest in property may have a separate trial for the value of his property.

In the latter part of the appeal statute, G. S. 1955 Supp., 26-102, we find additional language which is indicative of the legislative intent, as follows:

". . . If the compensation finally awarded to any owner or lien holder is less than the amount that has been paid to him, the court shall enter judgment against him and in favor of the condemner for the overpayment. The acceptance by the owner, lien holder, or interested party of the full amount of the award of the commissioners, or the amount paid into the court or any part thereof by the condemner, as set forth in the verified statement or declaration of said condemner as aforesaid, *shall be without prejudice to the right of appeal by said landowner, lien holder, or interested party, as provided herein, the issue of compensation to be determined on appeal by jury trial,* and final judgment of the court." (Emphasis ours.)

The other line of authority is well stated by Justice Holmes in *Boston Chamber of Commerce v. Boston,* 217 U. S. 189, 54 L. ed. 725, 30 S. Ct. 459:

". . . But the Constitution does not require a disregard of the mode of ownership—of the state of the title. It does not require a parcel of land to be valued as an unencumbered whole when it is not held as an unencumbered whole. It merely requires that an owner of property taken should be paid for what is taken from him. It deals with persons, not with tracts of land. And the question is what has the owner lost, not what has the taker gained. . . ."

This rule of the law is followed through a line of subsequent decisions and authorities. See *United States v. Certain Parcels of Land,* 43 F. Supp. 687; *Duckett & Co. v. United States,* 266. U. S. 149, 69 L. ed. 216, 45 S. Ct. 38; and 69 A. L. R. 1263.

In 29 C. J. S. Eminent Domain § 279:

"According to some authorities, where two or more persons have distinct interests or estates in any particular parcel of land, the value of each interest should be separately assessed, . . . The making of separate awards, rather

than the making of a single award and the determination by the court of the relative rights of the interested parties, is proper and sufficient where there is no dispute as to ownership or as to the different interests in the property. . . ."

In Nichols Em. Dom. V. 6 § 24.4:

"The joinder or consolidation of condemnation proceedings is ordinarily dependent upon the provisions of the statutes under which they are authorized. Generally, all persons whose property is taken or injured may be joined in one proceeding. However, where the damages arise from separate takings or injuries which are not part of one project such joinder is improper.

. . . . . . . . . . . . . .

"Where, by statute the owner or owners of each separate parcel is assured of a separate trial, it is not necessary to afford a separate trial to the owner of each separate estate or interest in such parcel."

And in *State v. Platte Valley Public Power and Irrigation District*, 147 Neb. 289, 23 N. W. 2d 300, 166 A. L. R. 1196:

"Generally the courts have approached the problem from the standpoint of determining the value of that which the owner has lost rather than that which the condemnor has gained. In Boston Chamber of Commerce v. Boston, 217 U. S. 189, 54 L. Ed. 725, 30 S. Ct. 459, the Supreme Court of the United States said: 'But the Constitution does not require a disregard of the mode of ownership,—of the state of the title. It does not require a parcel of land to be valued as an unencumbered whole when it is not held as an unencumbered whole. It merely requires than an owner of property taken should be paid for what is taken from him. It deals with persons, not with tracts of land. And the question is what has the owner lost, not what has the taker gained. We regard it as entirely plain that the petitioners were not entitled as a matter of law to have the damages estimated as if the land was the sole property of one owner, . . .' That the court has more recently said: 'It is . . . the owner's loss, not the taker's gain, which is the measure of compensation for the property taken . . .' United States *ex rel.* T. V. A. v. Powelson, 319 US 266, 87 L. Ed. 1390, 63 S. Ct. 1047. In the Boston case the market value of the undivided fee was much greater than the value of the separate interests." (p. 306.)

Also at page 1210 (166 A. L. R.) the court said:

"The rule requiring just compensation to each owner for that which is taken must be applied in all instances under our Constitution. '. . . any rule that may be laid down must itself be measured by the rule given in the Constitution, and any rule that so limits the damages in such case as that the result will be in fact less than just compensation for the injury suffered falls short of the constitutional measure.' City of St. Louis v. Brown, 155 Mo. 545, 56 SW 298, 302. It seems to us also that those courts which have undertaken to limit the total award to the value of the unencumbered whole have overlooked the factual situation that exists in many of these cases where there is a personal property right taken or damaged, in addition to the real property taken or damaged. Obviously, the value of the real property should not be the limit of the recovery in such cases."

This court recognizes the separate interest of the owner of a leasehold estate and the right to a separate award of compensation. (*Bales v. Railroad Co.*, 92 Kan. 771, 141 Pac. 1009; *State Highway Comm. v. Weiss*, supra; *State Highway Commission v. Safeway Stores*, 170 Kan. 413, 226 P. 2d 850; and *Miles v. City of Wichita*, 175 Kan. 723, 267 P. 2d 943.)

We cannot accept appellant's contention. In this jurisdiction the rule followed in consolidation of cases for trial is not one of substance but one of procedure. G. S. 1949, 60-765, provides:

"Whenever two or more actions are pending in the same court which might have been joined, the defendant may, on motion and notice to the adverse party, require him to show cause why the same shall not be consolidated, and if no cause be shown the said several actions shall be consolidated. The order for consolidation may be made by the court or by a judge thereof in vacation."

One of the requirements of the consolidation statute is whether or not the actions could have been joined in the first instance. G. S. 1949, 60-601, provides:

"The plaintiff may unite several causes of action in the same petition, whether they be such as have been heretofore denominated legal or equitable, or both. But the causes of actions so united must affect all the parties to the action, except in actions to enforce mortgages or other liens."

Motions for consolidation under these statutes are in the sound discretion of the trial court. (*Railway Co. v. Hart*, 7 Kan. App. 550, 51 Pac. 933; *Rice & Floyd v. Hodge Bros.*, 26 Kan. 164; and *Todd v. Central Petroleum Co.*, 153 Kan. 550, 112 P. 2d 80.)

In the absence of any showing of abuse of discretion in refusing to consolidate these appeals for trial, the judgment of the district court will be affirmed. No abuse of discretion is shown here.

Appellee and cross appellant specify as error the ruling of the trial court limiting the cross-examination of the court appointed appraisers.

On the trial of this action appellant Kansas Turnpike Authority called the three court appointed appraisers as witnesses. These appraisers had previously filed their official appraisement and report.

The report appeared as follows:

"Land taken ................................. $1,841.25
All other Damages........................... 1,104.94

    Total ................................. $2,946.19"

At the trial the appraisers' testimony was as follows:

"Fair and reasonable market value of the land ac-
quired ...................................... $1,104.75
Difference between before and after taking values... 1,841.44
_____
Total ...................................... $2,946.19"

Appellee and cross-appellant attempted to impeach the testimony of the witnesses on the basis of contradictory or inconsistent statements. The court sustained objection.

Both parties cite the same case law in *Searcy v. State Highway Comm.*, 145 Kan. 709, 67 P. 2d 534, where the court said:

"After the trial had been under way one of the commissioners who made the appraisement testified in behalf of the highway commission as to the fair market value of the land taken and the damages to the remainder. During his cross-examination he was asked and permitted to testify about the amount of the award. The highway commission objected to this and the objection was overruled. The commission urges here that this was error. The evidence should not have been admitted. The amount of the award made by the commissioners in a condemnation case is not admissible in evidence and it is not proper for a jury to be told the amount of it. In *C. K. & N. Rly. Co. v. Broquet*, 47 Kan. 571, 28 Pac. 717, the action was by a railway company to condemn land for a right of way. At the trial on appeal the trial court told the jury what the amount of the award made by the commissioners was. This court held this was error, and said:

'The award made by the commissioners was not admissible in evidence, and the court was not warranted in presenting the amount of the allowance as fact to the jury. When the appeal is taken, the case is tried *de novo* upon new evidence, and the award of the commissioners is no more competent than would be the former verdict of the jury upon an appeal from a justice of the peace to the district court. It is only the opinion of the commissioners as to the damages sustained, and the statement of the amount awarded by them is hearsay evidence, which is not admissible, whether stated by a witness or by the court in its charte.' (p. 572.)

"See, also, *State v. Brown* (Mo.), 95 S. W. 2d 661, and *A., B. & A. Railroad Co. v. Smith*, 132 Ga. 725, 64 S. E. 1073.

"The landowner points out that these questions were asked the witness on cross-examination after he had testified on direct examination as to his opinion on the market value of the land and were proper questions on cross-examination to test the credibility of the witness. In this connection it is pointed out that the trial court instructed the jury that this evidence should not be considered by it in determining the market value of the property. We hold that such evidence was not of such a nature that it was admissible for the purpose of testing the credibility of the witness. Had the witness at some other time said the land was worth some altogether different amount than he testified to, the questioning about this statement might have been permitted for the sake of attacking his credibility, but here he testified as to the same amount. . . ."

The court applied this rule in *Case v. State Highway Comm.,* 156 Kan. 163, 131 P. 2d 696, where the witness testified the land was worth $70.00 an acre, but admitted on cross-examination that he had previously appraised it at $85.00 an acre. The court allowed the cross-examination and instructed the jury that this inconsistent statement would go to his credibility as a witness.

The question in this case is whether or not the testimony of the appraisers was in fact a different amount than the report of appraisement.

It will be observed from the above figures that the total amount did not differ. The record shows that in answer to the question as to whether a different value was set on the land, one of the witnesses testified: "I didn't understand it that way. I will say, no," and then in substance, "Frankly, I don't think I did; it doesn't appear that way in the record."

In *Gant v. Gas Service Co.,* 156 Kan. 685, 687, 135 P. 2d 533, the court said:

"The question of the extent to which cross-examination of a witness to impeach his credibility will be allowed is one of discretion of the trial court."

Under these circumstances no prejudicial error being shown, the court did not abuse its discretion and its ruling was well within the rule of the Searcy case.

The judgment is affirmed.

FATZER, J. (dissenting): I do not believe the court's holding in ¶¶ 1(*a*) and 2 of the syllabus and the corresponding portion of the opinion correctly decides this case. G. S. 1955 Supp. 68-2006 provides in part that when property is acquired by eminent domain that, "Any such proceedings shall be conducted, and the compensation to be paid shall be ascertained and paid, in the manner provided by the laws of the state then applicable to condemnation or the exercise of the power of eminent domain by the state highway commission . . ." G. S. 1955 Supp. 68-413 authorizes the State Highway Commission to acquire title by eminent domain, and provides in part, "The right of eminent domain when exercised as herein provided shall be in accordance with the provisions of article 1, Chapter 26 of the General Statutes of 1949 or any amendments thereto, and in addition to the notice required therein all lienholders of record of the condemned land must also be notified. . . ." G. S. 1949, 26-101 provides for the filing of ". . . a petition

setting forth the purpose for which *the land is sought to be acquired,* a description of each lot and parcel of ground and the name of the owner . . . as shown by the records of such county." In *State, ex rel., v. State Highway Comm.* 163 Kan. 187, 182 P. 2d 127, it was held the trial court must first determine that *the land sought to be acquired* is necessary to the purposes of the Commission (the Authority) and that when an affirmative determination is made, it is binding on the Commission (the Authority) and cannot be collaterally attacked. In G. S. 1955 Supp. 68-2006 provision is made that title to any property condemned by the Authority shall immediately vest in the Authority and it shall be entitled to the immediate possession of the same upon depositing with the clerk the total amount of the appraised price, court costs and fees, notwithstanding any of the parties to such proceedings shall appeal from the appraisement.

From these proceedings it is apparent that two basic matters are dealt with: first, the land itself, described in the petition (*State, ex rel., v. State Highway Comm.* supra); and second, compensation for the land taken together with damages, if any, to the land remaining (*Federal Land Bank v. State Highway Comm.* 150 Kan. 187, 92 P. 2d 72; *State Highway Commission v. Weiss,* 167 Kan. 427, 207 P. 2d 480). The proceeding is essentially one *in rem* (*K. & C. P. Rly. Co. v. Phipps,* 4 Kan. App. 252, Syl. 2, 45 Pac. 926).

In my judgment, an appeal by the petitioner or a landowner, or a lienholder, or any interested party, or either of them, brings to the district court in its entirety the question of whether or not the amount of the award is adequate compensation for the land taken and the damages to the land not taken. Our decisions sustain this view. (*Dye v. Railroad Co.,* 77 Kan. 488, 492, 94 Pac. 785; *K. & C. P. Rly. Co. v. Phipps,* p. 257, supra; *Sinclair v. Missouri Pac. Rld. Co.* 136 Kan. 764, 766, 18 P. 2d 195; *Nelson v. City of Osawatomie,* 148 Kan. 118, 121, 79 P. 2d 857; *Federal Land Bank v. State Highway Comm.* supra; *State Highway Commission v. Weiss,* supra.)

The majority opinion states in effect that the use of the disjunctive in the first part of G. S. 1955 Supp. 26-102, which reads, "If the petitioner *or* the landowner *or* any lien holder of record. . . ." (Emphasis ours) indicates a legislative intent that separate trials are afforded those entitled to appeal from the award of the appraisers. This court has held to the contrary. In *Federal Land Bank v. State Highway Comm.,* supra, it was held:

"Whenever, under Laws 1937, ch. 226, § 1 (G. S. 1937 Supp. 26-102), an appeal is taken to the district court, either by the petitioner or by the land-owner ·or by a lienholder from an appraisement made in proceedings in eminent domain had under G. S. 1935, 26-101, the effect is to bring to the district court in its entirety the question of the sufficiency of the award, and the trial of that issue in the district court is conclusive on all of the parties, subject only to their right of appeal to the supreme court." (Syl. 1.)

And, in the opinion it was said:

"It will be observed that under that statute appeal is perfected, not by serving notice on any parties occupying what might be called an adverse position; it is perfected by notice filed with the clerk of the court. There is nothing in that statute which indicates or leads to the conclusion that as to a particular tract of ground the petitioner might appeal as to the lienholder and not the landowner, or vice versa, or that the lienholder could appeal separately as between the petitioner and the landowner, or that the landowner could appeal separately as between the petitioner and the landowner, or that the landowner could appeal separately as between the petitioner and the lien-holder. The statement is that if any one of the three appeal, an action shall be docketed and tried. The statute provides its own procedure up to the point where the appeal is perfected. When that has been accomplished 'an action shall be docketed and tried the same as other actions.' We are of opinion that under the statute there is and can be no separation as between parties. Whenever an appeal is taken, either by the petitioner or by the land-owner or by a lienholder, the effect is to bring to the district court in its en-tirety the question of the sufficiency of the award, and the trial of that issue in the district court is conclusive on all of the parties, subject only to their right of appeal to this court. . . ." (pp. 189, 190.)

The question before the district court on the motion to assign all appeals for trial in a single action was not whether the separate ap-peals of the landowner, the tenant, or the Authority should be consolidated, but whether they could be severed, and in the Federal Land Bank case, *supra*, this court said, *"We are of opinion that under the statute there is and can be no separation as between parties. . . ."* (Emphasis ours.)

It was further said,

"What division of the appraisement or award there is to be between him and the landowner must still be such as the court, in the exercise of its equit-able power and jurisdiction, may think proper. Prior to the amendments, when no notice to a lienholder was required, it was possible for the land-owner to appropriate the entire appraisement or award to himself, for no notice was required to be given to ·the lienholder. The two amendments recognized that the lienholder had an equitable interest in the appraisement or award and provided for its protection. *As we view the matter, it makes no difference who may appeal from the appraisement; on trial in the district court the issue is the same, that is, whether or not the amount of the appraise-*

ment is adequate compensation for the lands taken and the damages to the lands not taken. . . ." (pp. 190, 191.) (Emphasis ours.)

Our decisions are to the effect that the various owners' interests in the property condemned are transferred to the award allowed as damages to compensate them for the value of the land taken and for damages to the remaining land (*K. & C. P. Rld. Co. v. Phipps,* supra; *Dye v. Railroad Co.* supra; *C. K. & W. Rld. Co. v. Sheldon,* 53 Kan. 169, 35 Pac. 1105; *Federal Land Bank v. State Highway Comm.* supra; *State Highway Commission v. Weiss,* supra). When the award is paid into the clerk's office, anyone having an interest in the land appropriated or a claim upon the fund may take proceedings to protect his interest or claim (*C. K. & W. Rld. Co. v. Sheldon,* supra; *Dye v. Railroad Co.,* supra).

Where there are several interests or estates in a parcel of real estate taken by eminent domain, the prevailing rule is that the proper method of fixing the value of each interest or estate is to determine the value of the property as a whole, and then apportion the same among the several owners according to their respective interests or estates rather than to take each interest or estate as a unit and fix the value thereof separately. A few of the numerous authorities which support this rule are: *United States v. 25,936 Acres of Land, Etc.,* 153 F. (2d) 277; *City of St. Louis v. Rossi,* 333 Mo. 1092, 64 S. W. 2d 600, and the many authorities cited therein indicating that this rule is in effect in England, Massachusetts, Illinois, Kentucky, Minnesota, New Jersey, New York, Oregon, Pennsylvania, Washington and Wisconsin; *Grand River Dam Authority v. Gray,* 192 Okla, 547, 138 P. 2d 100; *Eagle Lake Improvement Co. et al. v. United States,* 160 F. (2d) 182; *Meadows v. United States,* 144 F. (2d) 751; *State, ex rel. McCaskill v. Hall,* 325 Mo. 165, 28 S. W. 2d 80, 69 A. L. R. 1256; *Carlock v. United States,* 53 F. (2d) 926; *Bogart v. United States,* 169 F. (2d) 210; *Kohl et al. v. United States,* 91 U. S. 367, 23 L. ed. 449; 6 Nichols (Third ed.), Eminent Domain, § 24.1 [1], p. 4; 18 Am. Jur., Eminent Domain, § 316, p. 960. See, also, extensive notes in 69 A. L. R. 1263, 98 A. L. R. 260, 166 A. L. R. 1211. The following decisions of this court support this view: *C. K. & W. Rld. Co. v. Sheldon,* supra, p. 172; *Dye v. Railroad Co.,* supra, pp. 491, 492; *K. & C. P. Rly. Co. v. Phipps,* supra, p. 257. In *City of St. Louis v. Rossi,* supra, it was said:

"The well-established general rules of eminent domain seem to be that when a piece of property is taken, in which the ownership is divided into

several interests, that as between the public and the owners, it is considered one estate; that the public right is exercised upon the land itself without regard to the subdivisions of interest; that the amount of the value of the land to which each one of the owners of the interests is entitled is no concern of the condemner; that the various owners' interests in the property are transferred to the fund, allowed as damages to compensate them for the injury to the land, which is substituted for the property taken; that the value of the property taken is all that the condemner must pay and this value cannot be increased by any contracts or distribution among the different persons owning interests in it; and that the sum of all the parts cannot exceed the whole. . . ." (l. c. 1102.)

On this same point in a Kansas controversy, Chief Judge Phillips, in *Bogart v. United States,* 169 F. (2d) 213, said:

"A condemnation proceeding is an in rem proceeding and when land is taken in which separate interests or estates are owned by two or more persons, as between the public and the owners, it is regarded as one estate. One award is just compensation for the entire value of the land is made and it stands in place of the property appropriated as the equivalent thereof. The distribution of the award between the owners of separate interests or estates is a matter wholly between them and the public is not concerned therewith."

That an owner of a leasehold interest is an owner of property in the constitutional sense and entitled to share in the compensation when all or part of the property leased is taken by eminent domain is well settled. (*Bales v. Railroad Co.,* 92 Kan. 771, 141 Pac. 1009; *State Highway Commission v. Safeway Stores,* 170 Kan. 413, 226 P. 2d 850, 170 Kan. 545, 228 P. 2d 208; *Miles v. City of Wichita,* 175 Kan. 723, 267 P. 2d 943.) But, the right to share in the award does not entitle such owner to a separate trial by a separate jury to determine compensation and damages for the separate interests appropriated. One eminent domain proceeding was instituted in the instant case to acquire the land described for which only one award may be made.

As stated in *State Highway Commission v. Weiss,* supra, "The question to be determined in such appeal is the amount of compensation or damages, if any, to be awarded on account of the appropriation by the condemner of the property in question."

Separate interests in the land acquired are transferred to the single award, which is substituted for the property taken, and the value of the parts cannot exceed the value of the whole. A condemner ought not be required to pay more for separate interests than the land acquired would be worth if owned by one person. The value of each interest is ascertained by determining the value

of the land as a whole, which may be apportioned among the several owners as their respective interests may appear and as the district court in the exercise of its equitable power and jurisdiction may deem proper. (*Federal Land Bank v. State Highway Comm.,* supra.)

I would reverse the judgment and remand this case to the district court with directions to proceed with the trial of all appeals in one case in which the landowner, the owner of the leasehold interest and the Authority may present their evidence to one jury to determine the sufficiency of the award with respect to the value of the land taken and damages, if any, to the land remaining.

WERTZ, J., concurs with the foregoing dissent.