Rice v. Randolph.

---

No. 23,610.

LUCY A. RICE, *Appellant,* v. EVELYN RANDOLPH, *Appellee.*

SYLLABUS BY THE COURT.

1. ORAL CONTRACT CONCERNING REAL ESTATE—*Divorced Husband and Wife— Consideration Remarriage—Contract Fully Performed—Statute of Frauds.* A husband and wife were divorced and the homestead awarded to the husband who thereafter induced his former wife to consent to a remarriage upon his oral promise that from the time of the marriage the homestead should be mutually regarded by them as belonging to her. The day before the second marriage occurred he conveyed the property by warranty deed to a third person, the stated consideration being one dollar. Subsequently, the parties were again divorced, the wife remaining in possession of the property. In an action brought against her to recover title and possession by the grantee in the deed, it is held that the contract having been fully performed when the marriage took place, the doctrine of part performance has no application. "The statute of frauds does not render void the verbal contracts to which it refers. They are valid for all purposes except that of suit." (*Weld v. Weld,* 71 Kan. 622, 624, 81 Pac. 183.)

2. SAME—*Concerning Real Estate—Statute of Frauds.* The plaintiff, being neither a party nor a privy to the oral agreement, cannot invoke the statute of frauds as a basis for her action. (*Vaught v. Pettijohn & Co.,* 104 Kan. 174, 178 Pac. 623.)

Appeal from Wyandotte district court, division No. 3; WILLIAM H. Mc-CAMISH, judge. Opinion filed April 8, 1922. Affirmed.

*James L. Hogin,* and *Roy R. Hubbard,* both of Kansas City, for the appellant.

*David F. Carson, Charles A. Miller, David E. Henderson,* and *Louis W. Johnson,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The action was in ejectment and involves the owner-ship and right to the possession of a house and lot in Kansas City, Kansas, described as No. 1341 Cleveland avenue. The verdict, findings, and judgment were in favor of the defendant, and the plaintiff appeals.

The common source of title is Simon H. Randolph, formerly the husband of the defendant. The following is the substance of defendant's testimony: She and Simon H. Randolph were married in January, 1907, and while living together as husband and wife acquired the property in controversy which they occupied as their homestead. They were divorced in July, 1911, and the property by the decree was awarded to the husband who continued to occupy it as his home. The defendant moved to Kansas City, Mo., and lived there until January, 1914. Sometime in 1913 she met her former husband and he began to court her and endeavored to obtain her consent to remarry him. He told her he would see the judge and have the decree of divorce set aside and that if she would come and live with him, they would be husband and wife again, and he said he wanted her to have the home. If she would come back to him he would give it to her. It would be hers from the time she moved into it and allowed him to have the decree set aside. "It would be considered mine." She believed that if the divorce decree were set aside and she went back to live with him she would be his wife again, and in January, 1914, went to live with him in the home, and they continued to cohabit as husband and wife until in the spring of 1917 when she had her suspicions aroused and employed an attorney to look the matter up and learned that the decree had not been set aside. She told her husband of this and threatened to get the law to protect her interests. Her testimony is, "He told me there was no need to do that; everybody thought we were married and that we would just get a license and be married." He is an employee in the railway mail service; at that time a married man could secure a run which would leave him at home oftener than if unmarried. He induced her to consent to go to Olathe and be married, and promised her that if she would do this the home place would be hers. On the next day they went to Olathe and were married. The day before, on April 17, Simon H. Randolph executed a warranty deed conveying the property in question to Lucy A. Rice, the plain-

tiff, who is his sister and who lived in Virginia. The consideration stated was one dollar. After acknowledging the deed he had an attorney mail it to the plaintiff. After the Olathe marriage, the parties lived together as husband and wife and occupied the property. In March, 1919, the wife brought suit for divorce but on May 26 dismissed the action on the promise of her husband to treat her better. The next day he sued for divorce, which was subsequently granted. In his petition nothing was said about the property in question. The deed to the plaintiff was not recorded until March 21, 1919, the day after defendant's action for divorce had been brought, and she first learned of the deed about May 27, 1919, when the husband commenced his action.

Simon H. Randolph testified that there was no agreement of any kind between himself and his wife prior to or after their remarriage concerning the real estate in question. He admitted that he went to see the judge of the district court who granted the first divorce to learn if it were possible to have the decree set aside because at that time he contemplated remarriage with the defendant. His testimony is that the defendant became his housekeeper in 1914 at her own suggestion and that he paid her wages of $20 a month and board and room and that the same arrangement continued until the marriage at Olathe. He denied that after the first divorce and prior to the Olathe marriage they had ever lived together as husband and wife. He admitted that he had given her a number of checks in which she was named as Mrs. S. H. Randolph.

For the purpose of contradicting the defendant's story the plaintiff offered in evidence her petition in the divorce case she brought against her husband after the Olathe marriage which was sworn to and which contained the statement that she and her husband owned this property and she was entitled to one-half of it; also her answer and cross petition and other verified pleadings filed in the subsequent divorce case in which she claimed to own a one-half interest in the property. She was recalled and testified that at the time these pleadings were drawn she had never explained to her attorney anything concerning the agreements with her husband in regard to the property.

The jury made findings of fact in substance that Simon H. Randolph made an oral gift of the property to the defendant just prior to the time she went back to live with him in 1914; that he continued to pay the taxes, insurance and upkeep of the property;

they made a finding that Simon H. Randolph orally promised the defendant that after the marriage between them the place should be mutually considered her property; that this was immediately prior to the marriage at Olathe. To questions as to the consideration for these promises, if any, they answered: "Herself in marriage." They made a finding that in the divorce proceedings referred to the defendant had stated under oath that the property in controversy belonged to her and Simon H. Randolph.

The main contention of plaintiff is that the doctrine of partial performance has no application to a contract of this character; that partial performance can only be relied upon in contracts relating to lands where the nonexecution of the contract would operate as a fraud on the party who had partially performed and who could not be reasonably compensated in damages.

It is defendant's contention that there is no question here of whether the contract would support an action upon her part to compel specific performance; that the contract by which, in consideration of her marriage to her former husband, she was to become the equitable owner of the property, was fully executed by the contracting parties long before the plaintiff claims to have acquired an interest in the property; that defendant can assert her equitable title in defense of this action in ejectment. The contention is predicated upon the findings of the jury that when the first oral promise was made, the defendant, relying upon the representations that the decree of divorce had been set aside and that by their living together they would become husband and wife, nothing further remained to be done by either party to the contract; and that when the parties were remarried, that being the sole consideration for the promise, there was nothing that remained to be done by either party.

The defendant relies upon former decisions, including *Weld v. Weld,* 71 Kan. 622, 81 Pac. 183, where it was said in the opinion:

"The statute of frauds does not render void the verbal contracts to which it refers. They are valid for all purposes except that of suit. (*Stout v. Ennis,* 28 Kan. 706.) The parties may perform them if they desire, and when performed the statute has no application to them. (29 A. & E. Encycl. of L. 829, 941.)" (p. 624.)

In that case the oral agreement made in consideration of marriage was that after the marriage a debt of one of the contracting parties to the other should be mutually regarded as paid. It was ruled

in the syllabus that the agreement "is fully performed when the marriage takes place and is not thereafter affected by the statute of frauds." It was held that it was no part of the agreement that the husband should enter of record a satisfaction of the mortgage debt. It was said in the opinion,:

"Since the parol evidence introduced established a contract fully performed, it was competent." (p. 624.)

In the present case the contract established by the defendant's evidence was not that after marriage the husband would make a conveyance to the wife in consideration of the marriage, but that the property should be mutually regarded by them as belonging to her. The opinion in the Weld case, *supra,* recognized the doctrine for which plaintiff in the present case contends that generally marriage is not a sufficient part performance to take a contract out of the provisions of the statute, but it was held in that case that there was no question of part performance for the reason that the contract was fully performed when the defendant married the plaintiff. In that case witnesses testified that they were present after the marriage when the husband said his wife need not worry about the debt; "her mortgage is paid." But this statement of his was not part of the performance of the contract. Proof that he made the statement merely served to corroborate the wife's testimony as to the terms of the contract. There was no agreement on his part that he would make such a statement any more than there was an agreement that he should release the mortgage.

The plaintiff contends that a parol contract within the statute of frauds sought to be enforced by part performance must be established and shown by the evidence to be clear, definite and certain. The answer is that this contract is not sought to be enforced by part performance but by full performance; and as to the evidence, it was definite and certain; that is to say, the wife testified to a definite statement that the property was to be regarded by them as belonging to her if she would consent to a remarriage.

The plaintiff makes an argument based upon the contention that the evidence was not sufficient to sustain the judgment. Attention is called to the many statements made by the defendant under oath in pleadings filed in several actions between herself and her former husband which were contradictory to her claims on the trial. But these contradictory statements merely went to the weight and credi-

bility to be given to her testimony on the trial. As was said in the opinion in the Weld case:

"The evidence might perhaps have been made the basis of different conclusions as to the existence of the contract relied upon as a defense to the suit. It was, therefore, properly submitted to the jury for interpretation. The jury has performed its duty in that respect, and the trial judge has approved the result. Hence, this court will not interfere." (p. 624.)

For another reason we think the plaintiff cannot prevail. She was a stranger to the oral contract and as held in *Vaught v. Pettyjohn & Co.*, 104 Kan. 174, 178 Pac. 623, the statute cannot be invoked by third parties not concerned therein. "Oral contracts relating to land are not inherently illegal; the parties thereto may consummate them if they are willing to do so." (Syl. ¶ 1.) It was held:

"The rule of the statute of frauds which requires contracts for the conveyance of land to be in writing in order to furnish a legal basis for their enforcement, concerns only the parties to such contracts and their privies. The statute cannot be invoked by third parties not concerned therein." (Syl. ¶ 1.)

In the opinion it was said:

"A third party cannot make the statute of frauds available as an excuse for his wrongful conduct which interferes with and prevents the consumption of a transaction between other persons. The statute cannot be raised by those who were neither parties nor privies to the agreement." (p. 177.)

That decision was followed and approved in *Kindig v. Richardson*, 108 Kan. 218, 194 Pac. 920. There two persons who each owned a half interest in lands orally agreed that one of them should trade off as his own the interest of both in part of the lands and that the other should be the exclusive owner of the remaining lands. It was held that the statute of frauds could not be invoked to strip the equitable owner of the property at the instance of the judgment creditors of the other, "or of any third party not privy to the oral contract," and further, that the facts could be established by parol testimony. The plaintiff was not a party to the oral agreement between the defendant and her former husband. The contract having been fully performed, the plaintiff has no right to raise any objection to the full performance of the contract by the parties to it.

For the reasons stated the court properly refused to give the instructions requested by plaintiff based upon the proposition that marriage is not a sufficient part performance to avoid the effect of the statute of frauds; and the court properly instructed that if the

jury believed from the preponderance of the evidence that the first oral promise was made by Simon H. Randolph substantially as claimed by defendant and that she relied upon the representations and statements and in good faith accepted his proposal and went to live with him as his wife and entered fully into the marriage relation with him believing she was his wife, she thereupon became the equitable owner of the real estate, and no attempt of his thereafter to convey the real estate to the plaintiff could defeat defendant's title; further, that if they found that she acquired the real estate as claimed by her in 1914 and that Simon H. Randolph, in order to induce her to enter into a formal marriage with him in 1917, again promised her that the property should be mutually considered and regarded by them as hers from the time the ceremonial marriage should be entered into, and thereby induced her to consent to the ceremonial marriage, his renewed offer and acceptance would not estop defendant from claiming under the first offer and acceptance; and that it was for the jury to determine the real intention of the parties and the second offer might be considered by them in determining the effect of the first, and that if the evidence so convinced the jury they might consider that the second was a mere affirmation and ratification of the first offer. We find no error in the instructions, and the judgment is affirmed.