No. 39,101

VERNON H. MILES and MILES SAND SERVICE, *Appellees*, v. THE CITY OF WICHITA, a Municipal Corporation, *Appellant*.

(267 P. 2d 943)

Opinion filed March 6, 1954.

*Wayne Coulson*, of Wichita, argued the cause and *Fred W. Aley, Howard T. Fleeson, Homer V. Gooing, Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk, Gerrit H. Wormhoudt* and *Theodore C. Geisert*, all of Wichita, were with him on the briefs for the appellant.

*John F. Eberhardt*, of Wichita, argued the cause and *George Siefkin, George B. Powers, Samuel E. Bartlett, Carl T. Smith, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge* and *Robert M. Siefkin*, all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action by a city, pursuant to G. S. 1949, 26-201 et seq. to condemn real estate for flood purposes.

The petition asking for the appointment of commissioners was filed on August 22, 1950. The land was duly appraised and report filed. A landowner and his lessee each appealed from the appraisement. The trial resulted in a verdict and judgment in favor of both the landowner and the lessee.

This appeal affects only the judgment in favor of the lessee. One Gsell is the landowner. Vernon H. Miles and The Miles Sand Company are the lessees. They will be referred to as the company.

The notice of appeal stated the company, which was the lessee and had a special interest in the real estate, was dissatisfied with the award of the appraisers in which no sum whatever was allowed it. It was filed on June 15, 1951. A bill of particulars alleged that on September 1, 1950, the owner of the land and the company made an agreement whereby the company was to operate a sand and gravel pit on land; described the real estate in question; the lease to run until August 31, 1955; and the amount of sand on the land leased and the price for which it could be sold and the cost of operation; that had it not been for the condemnation proceedings the sand company could have removed all of the sand from the leased grounds; and it had been damaged in the amount of $307,-286.20. Judgment was asked for that amount. A copy of the lease was attached. Some time in December, 1952, the city filed a motion for judgment on the pleadings because they showed on their face the company had taken the lease under which it claimed *pendente lite* and were not entitled to any compensation or damages.

During the argument on this motion counsel for the sand company was given permission to and did amend its bill of particulars. The amendment dictated into the record was to the effect that the sand company had been operating on the Gsell land for over two years prior to the time anything at all was done in the case; that it began negotiations with Gsell as early as December, 1949, and January, 1950. The terms of the lease had been agreed upon and it was turned over to Gsell's attorney to draw the lease and as early as June, 1950, the company had moved all its properties onto the described land and by August 22, 1950, was in full operation.

Thereupon the motion of the city for judgment on the pleadings was renewed and denied. The company in its opening statement

stated that sometime prior to all of the things that had transpired in the case it had been operating by taking sand out of the river with its equipment on Gsell's land; that it became apparent the sand it was taking out of the river was too fine and in 1949 it began discussing with Gsell a lease upon the land in question and had agreed upon the terms of a lease by the first of January, 1950, and was operating under it; and that on the first of September, 1950, the lease was finally entered into.

Both appeals were consolidated in the district court and heard together. The city demurred to the evidence of both parties on the general ground that they had produced no credible evidence of market value, and in addition that the company had not shown itself entitled to compensation because it took the lease with actual and constructive knowledge of the pending condemnation proceedings. This demurrer was overruled as to both Gsell and the company.

The jury answered special questions having to do with the company's appeal as follows:

"No. 13. State the entire number of acres covered by the Miles lease. A. 16.81.

"No. 17. State the number of acres which are covered by the Miles lease but not taken, if any, which were rendered useless and valueless by reason of the taking. A. 6.88.

"No. 19. State the fair cash market value of the Miles lease before the taking of December 27, 1950. A. 11,712.00.

"No. 20. State the fair cash market value of the Miles lease after the taking of December 27, 1950. A. Nothing."

Other special findings related to the Gsell appeal.

The jury returned a verdict in favor of the company for $11,712 and in favor of Gsell in the amount of $12,835. The city moved for judgment in its favor against Gsell and the company notwithstanding the verdict because having taken the lease during the condemnation proceedings the company was not entitled to compensation and the evidence was not sufficient to establish a right of recovery. This motion was not based on answers to any particular question. The company filed a motion for a new trial and to strike the answers to special questions without designating what special question.

Gsell also filed a motion for a new trial. The city filed a motion to strike the answers to certain special questions. What ones we do not know. These motions were all overruled and judgment was rendered in accordance with the verdicts. The judgment in favor

of the landowner Gsell was paid and is not involved in this appeal.

It should be noted there was no motion for a new trial by the city. The city appealed from the judgment rendered in favor of the company, from the order overruling its motion for judgment on the pleadings, from the order overruling its demurrer to the evidence, from the order overruling its motion for judgment notwithstanding the verdict and from the order overruling its motion to strike answers to special questions.

The specifications of error are that the court erred in overruling the city's motion for judgment on the pleadings; in overruling its demurrer to plaintiff's evidence; in overruling its motion for judgment notwithstanding the verdict; in refusing to hold that the company was not entitled to compensation because any interest it had in the land condemned was acquired *pendente lite* and was subordinate to the rights of defendant; in refusing to hold the company's evidence was insufficient to prove a cause of action for the reason that its witnesses as to market value and damages were not qualified, and because all such witnesses took into account elements of damage which were in law improper for consideration by reason of which their opinion evidence was without probative value.

The record is such that we may consider together the city's motion for judgment on the pleadings, its demurrer to the evidence and its motion for judgment notwithstanding the verdict. The latter two stated two grounds why they should be sustained. One was the *pendente lite* matter, the other had to do with a matter of proof.

We shall first consider the *pendente lite* argument. This turns on the question of whether the pleadings and proof showed the sand company acquired its lease *pendente lite* or rather the effect to be given the surrounding facts and circumstances under which the lease was entered into. The city points out the condemnation proceedings were begun on August 22, 1950, while the written lease was entered into between Gsell and the company on September 1, 1950, or some ten days later. Hence the city argues the company took the lease with full notice that the city was about to condemn and cannot recover. Many authorities are cited where leases were taken during the process of condemnation proceedings and the above view was adopted.

The company's answer to this argument is the matter set out in the amended bill of particulars, which shows that while the actual written lease was entered into on September 1, 1952, the company

and Gsell had entered into an oral lease on the same terms as the written one on a date many months prior to that one and both parties had been operating pursuant to its terms ever since. There was substantial evidence to prove these allegations of the amended bill.

The city argues the proof offered by the company as to what took place before September 1 established not a lease but an agreement to make a lease in the future and created for the company no right whatever in the land.

The amended bill of particulars alleged the making of a lease; that all its terms had been agreed upon and all that remained to be done was drawing of it by Gsell's attorney. The case was tried upon that theory. As early as June, 1950, the specific terms were agreed upon and the company began moving its tipple and other equipment onto the land. This was a complicated and expensive process and was completed by August 1, 1950, at a cost to the sand company of $16,000. The new sand pit was in operation and the company was actually pumping and delivering sand from it prior to August 22, 1950, when the condemnation proceedings were filed.

The city argues notwithstanding the above that since the terms of this oral lease were afterwards incorporated into the written lease the former became merged into the latter and hence any rights lessee had were fixed at the date of the written lease.

The general rule is well stated in a comprehensive note at 165 A. L. R. 757. There it is stated:

"The mere intention to reduce an oral or informal agreement to writing, or to a more formal writing, is not of itself sufficient to show that the parties intended that until such formal writing was executed the parol or informal contract should be without binding force."

Here there was substantial evidence that a valid oral lease had been entered into by the parties; both parties had carried it into effect and later its terms were incorporated into the written lease. The preparation and execution of the written lease was but little more than a clerical act.

In *Willey v. Goulding*, 99 Kan. 323, 161 Pac. 611, in considering an analogous situation we said:

"The fact that the parties may have contemplated the subsequent execution of a formal instrument as evidence of their agreement does not necessarily imply that they had not already bound themselves to a definite and enforceable contract, whose terms could be changed only by mutual consent."

(See, also, *Middleton v. City of Emporia*, 106 Kan. 107, 186 Pac.

981; also 12 Am. Jur. "Contracts" 521; Restatement of the Law of Contracts, para 26, page 33.)

The city argues the oral lease was unenforceable under the statute of frauds—hence the company was a mere tenant at will and had no rights under the lease, for the loss of which the city was obliged to compensate it.

If we assume for the sake of argument the lease was not enforceable, still it does not follow that the city could take it without compensating the company. The fact remains that Gsell had not seen fit to repudiate the lease. He considered himself bound by it. For all this record indicates he regarded it as advantageous to him. In *Powell v. Powell,* 172 Kan. 267, 239 P. 2d 974, we said:

"Neither the statute of frauds nor the statute of trusts was designed to operate as a vehicle for the promotion of injustice but as a means of preventing fraud. Oral agreements concerning lands are not inherently illegal. The parties thereto may consummate them if willing to do so. Such agreements are valid for all purposes except as a basis for an action to enforce them between the parties thereto."

(See, also, *Weld v. Weld,* 71 Kan. 622, 81 Pac. 183.) In this action both parties to the lease had seen fit to comply with its terms. Under such circumstances it was not open to the city to attack its validity. (See *Powell v. Powell,* supra; also *Vaught v. Pettyjohn & Co.,* 104 Kan. 174, 178 Pac. 623; also *Hirt v. Bucklin State Bank,* 153 Kan. 194, 109 P. 2d 171; also *Rice v. Randolph,* 111 Kan. 73, 206 Pac. 314.)

The city next argues its demurrer to the evidence and motion for judgment notwithstanding the verdict should have been sustained because there was no substantial evidence of any value. The basis of this argument is that witnesses were permitted to give their opinion as to the market value of the lease and these same witnesses were permitted to testify to a market value derived from factors which the court had held could not be considered by the jury. There is a grave question whether this question is here. The testimony was objected to and the objection was overruled. This ruling was a trial error and can ordinarily be passed on by us only if it was called to the attention of the trial court in a motion for a new trial. (See *Billups v. American Surety Co.,* 173 Kan. 646, 251 P. 2d 237.)

The city makes the point that since the evidence to which objection was made was inadmissible because it was predicated upon speculative factors it had no probative value and constituted no evi-

dence at all of value. The city relies upon *Myers v. Shell Petroleum Corp.*, 153 Kan. 287, 110 P. 2d 810, to sustain this position. It is doubtful if that opinion is entitled to the weight claimed for it. We have, however, decided to pass on the question argued. It was proper for the witnesses to consider in passing their opinion as to the market value of the lease matters, such as investment value of one of many criteria in reaching a conclusion. (See *Searcy v. State Highway Comm.*, 145 Kan. 709, 67 P. 2d 534; also *Glover v. State Highway Comm.*, 147 Kan. 279, 77 P. 2d 189.)

We have examined the point raised by the company in its cross-appeal and find it to be without merit.

The judgment of the trial court is affirmed as to the appeal and the cross-appeal.