No. 47,967

Ward E. King, *Appellant*, v. Loraine E. Wenger, Lorene E. Ralston, Donald Vandover and Dottie Vandover, and Raymond J. Harrison and Melva J. Harrison, *Appellees.*

(549 P. 2d 986)

Opinion filed May 8, 1976.

*Howard A. Spies*, of Schroeder, Heeney, Groff & Spies, of Topeka, argued the cause and was on the brief for the appellant.

*Charles Rooney, Sr.*, of Rooney and Rooney, of Topeka, argued the cause and was on the brief for Loraine E. Wenger and Lorene E. Ralston, appellees.

*Richard P. Senecal*, of Duncan, Senecal & Bednar, Chartered, of Atchison, was on the brief for Donald and Dottie Vandover, and Raymond J. Harrison and Melva J. Harrison, appellees.

The opinion of the court was delivered by

FROMME, J.: This is an action for specific performance of an agreement for the sale of real estate. The action was tried to the court and judgment was rendered in favor of all defendants. The plaintiff Ward E. King has appealed.

The real estate in controversy consists of approximately 160 acres of land in Brown County, Kansas. The defendants Loraine Wenger and Lorene Ralston each owned an undivided half interest in the property subject to a life estate in their mother, Ethel Wenger. Ethel Wenger's health was failing and she discussed the advisability of selling this land with her daughters. They agreed it should be sold and Loraine Wenger approached the plaintiff to have him appraise the land for sale. The plaintiff declined but expressed a desire to purchase the property.

The mother, Ethel Wenger, was hospitalized in Holton, Kansas. The plaintiff visited her in the hospital on December 26, 1972, and discussed his prospects for purchasing the land. The daughter, Loraine Wenger, also visited her mother in Holton on that day and met the plaintiff at the hospital. All three discussed the sale of the property and the mother, Ethel Wenger, indicated that she was willing to release her interest so the land might be sold.

The sale of the land to plaintiff was further considered and a purchase price of $16,000.00 was agreed on. The plaintiff and Loraine decided it would be helpful to contact the other sister, Lorene Ralston, by telephone. She lived in Colorado. Both the plaintiff and Loraine spoke with Mrs. Ralston over the telephone and the terms of the sale were discussed and agreed on in a general way.

Immediately following the telephone conversation the plaintiff King and Loraine Wenger sat in Loraine Wenger's car while she wrote out an agreement in longhand on a piece of paper. This agreement which gives rise to the present action is as follows:

"Agreed date 12-26-72

"N ½, NW ¼, Sec. 14, Twp. 4, Range 15

"W ½, NE ¼   "   "   "   4,   "   15

"Sale price $16,000.00 + maximum of $250.00 closing costs for 160 acres of land as situated above.

"Earnest payment of $1,000.00 made of this date which would be re-

turned to purchaser in case of failure to clear abstract or deliver merchantible title.

"Additional down payment of $3,000.00 to be made as date of delivery of acceptable title to buyer.

"Payments of $2,000.00 annually commencing one year from date of down payment plus five percent annual interest on unpaid balance until paid in full.

|  |  | Seller: |
|---|---|---|
|  | x | Loraine E. Wenger |
| Ward King | x | Loraine E. Wenger for |
| buyer |  | Lorene E. Ralston" |

It was agreed at the time the agreement was signed that the parties would meet that same afternoon in the office of the plaintiff's attorney, Robert Gernon, where a formal contract for sale of the property would be drawn and executed. The earnest payment of $1,000 mentioned in the hand written agreement was not made to Loraine Wenger.

When the two parties arrived at Gernon's law office they discussed details of the sale with Mr. Gernon. He advised them that he did not have time that day to draw a formal contract. He suggested that he be permitted to prepare and forward such a contract to the parties for their signatures at a later date. Mr. Gernon advised plaintiff not to deliver the earnest money to Loraine Wenger at that time. Plaintiff did make out two checks totaling $1,000.00 and naming Loraine as payee, but the checks were retained by plaintiff's attorney.

The formal written contract was never signed by the Wengers. It was drafted and mailed to Loraine on January 9, 1973, but Mr. Gernon was advised that the contract as drawn was not in accordance with their previous understanding. The sellers would not agree to stipulate the exact number of acres covered in the legal description. The formal contract did not require the purchaser to pay the first $250.00 of closing costs as specified in the hand written agreement and there were other terms in the formal contract which were not agreeable to the sellers.

On January 19, 1973, Mr. Gernon replied by mail and enclosed a revised contract for signatures. In the letter Mr. Gernon stated:

". . . It was never my understanding that the whole agreement between the parties was to be ironed out in black and white on the day you were in the office. As a matter of fact it seemed that all the parties were in a rush that date, and that the written real estate contract would be drawn by me to conform with standard real estate contract procedures that we use here in the office. . . ."

The revised contract was rejected by Loraine and returned to

plaintiff's attorney, Gernon, on January 29, at which time she advised that the property had been sold to other parties.

A formal written contract had been entered into by the Wengers on January 20, 1973, agreeing to convey this land to Donald L. Vandover, Dottie O. Vandover, Raymond J. Harrison and Melva J. Harrison. The sale price was $16,000.00 payable in installments. The contract was signed individually by Loraine E. Wenger, Ethel H. Wenger and Lorene E. Ralston. Their signatures were acknowledged by notary publics.

After tendering a down payment on February 15, 1973, plaintiff filed this action for specific performance against Loraine Wenger, Ethel Wenger and Lorene Ralston. The new purchasers, Vandovers and Harrisons, were subsequently joined in the action as interested parties.

Ethel Wenger died prior to trial and Lorene Ralston's motion for summary judgment was sustained by the trial court. The plaintiff King proceeded in a trial to the court against Loraine Wenger and the new purchasers of the property. No appeal has been taken from the order granting summary judgment to Lorene Ralston. From the evidence at the trial the court made findings of fact and conclusions of law. The findings include those facts previously narrated and the court concluded:

"The plaintiff has never made any payment for purchase of the land to defendants, and has never been in possession of this real estate.

"The plaintiff has failed to meet the burden of proof and his prayer for specific performance of the instrument dated December 26, 1972, the same being defendants exhibit one, is hereby denied."

On appeal, although numerous points of error are listed by appellant, only one question need be considered. This court must determine whether the written memorandum of December 26, 1972, constitutes a binding contract for sale of property upon which an action for specific performance will lie.

Whether parties to an informal agreement become bound prior to the drafting and execution of a contemplated formal writing is largely a question of intent on their part. The intent of the parties is to be determined by the surrounding facts and circumstances of each case. (17 C. J. S., Contracts, § 49, p. 697; 17 Am. Jur. 2d, Contracts, §§ 28, 29, pp. 363-368; Anno: 122 A. L. R. 1217, Contract—When Deemed Closed; 165 A. L. R. 756, Contract—When Deemed Closed.)

This court has held that the mere intention to reduce an informal

agreement to a formal writing is not of itself sufficient to show that the parties intended that until the formal writing was executed the informal agreement should be without binding force. (*Storts v. Eby Construction Co.*, 217 Kan. 34, 535 P. 2d 908; *Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc.*, 212 Kan. 730, 512 P. 2d 379; *Miles v. City of Wichita*, 175 Kan. 723, 267 P. 2d 943.)

However, the fact that the parties contemplate the execution of a formal document is some evidence, not in itself conclusive, that they intend not to be bound until it is executed. And where formal contracts are normally executed because of the complexity and importance of the transaction involved the more likely it is that the informal agreement is intended to be only preliminary. (1 Corbin on Contracts [1963], § 30, p. 97.)

The subsequent conduct and interpretation of the parties themselves may be decisive of the question of whether a contract has been made even though a document was contemplated and has never been executed. For that reason in *Miles v. City of Wichita*, supra, where the parties to an oral lease of property had begun performance and the preparation and execution of a written agreement which remained uncompleted was little more than a clerical act it was held that a valid contract existed under the oral agreement.

But where the intent of the parties is clear that they are negotiating with an understanding that the terms of the contract are not fully agreed upon and a written formal agreement is contemplated a binding contract does not come into existence in the absence of execution of the formal document. (*Weil & Associates v. Urban Renewal Agency*, 206 Kan. 405, 479 P. 2d 875.)

At the time the parties in this case drew up their tentative written agreement they both contemplated adjourning to Mr. Gernon's office to work out additional details of the land transaction and upon completion of that task to draft and execute a formal contract. Discussion at the attorney's office involved a number of matters which Gernon later said had not been clearly settled. In a letter to Loraine Wenger he remembered that all of the contract terms had not been agreed to during the meeting at his office. Neither party began performance under the informal agreement. King withheld payment of $1,000.00 earnest money upon his attorney's advice entrusting the checks for payment to his counsel rather than tendering them to Loraine Wenger.

The informal agreement was executed by only one of the three co-owners of the property, Loraine Wenger. Although she presumed to sign for her sister, Lorene Ralston, she had no written authorization to do so. K. S. A. 33-105 provides that an interest in real estate shall not be granted unless the grant be in writing signed by the grantor or the grantor's agent lawfully authorized in writing to do so. K. S. A. 33-106 states that no action shall be brought to charge a party upon any contract for the sale of lands ". . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing."

Therefore is it apparent in this case, where the parties contemplated a sale of all interests in the property, that the temporary agreement would not suffice to complete the transaction and govern the rights of all parties in this sale regarding Lorene Ralston's interest in the real estate. Especially was this true since the sale agreement contemplated a purchase of the land on installment payments over a six year period.

Although the plaintiff admits the $1,000.00 earnest money payment was not delivered to Loraine Wenger in accordance with the terms of the hand written agreement, he argues that in reliance on the agreement he made expenditures for attorney's and abstractor's fees and has partially performed the agreement. The record indicates he was reimbursed for the abstractor's fees and the expenses of his attorney must be considered normal business expenses incurred on the expectancy of ultimate success, not performance of his obligations under a completed agreement. (See *Weil & Associates v. Urban Renewal Agency,* supra, at p. 416.) Plaintiff makes some further contention that he changed his position as a result of the agreement by selling his trucking business in anticipation of increasing his farming operation. Without regard to the legal sufficiency of such a claim, the record indicates he was in the process of selling his trucking business prior to his negotiations for the purchase of this land.

Under the facts and circumstances of this case the trial court was correct in holding that the parties did not enter into a binding contract. The parties did not intend to become legally bound until a formal contract was drawn by appellant's attorney and approved by the owners of the property. The evidence clearly indicates the

earnest money was never paid to Loraine Wenger and that the owners did not agree to all the terms set forth in the formal contract. The owner's rejection of these terms was promptly communicated to plaintiff's attorney and no binding contract was made by the parties.

Judgment affirmed.

SCHROEDER, J., not participating.