**John L. DAVSKO, Plaintiff,**

v.

**GOLDEN HARVEST PRODUCTS, INC., et al., Defendants.**

**Civil Action No. 96–2196–EEO.**

United States District Court, D. Kansas.

May 6, 1997.

David A. Vorbeck, Clark Hill, P.C., Kansas City, MO, Cynthia F. Grimes, Grimes & Rebein, L.C., Lenexa, KS, for John L. Davsko.

Robert J. Bjerg, Lynne C. Kaiser, Rachel H. Baker, Seigfreid, Bingham, Levy, Selzer & Gee, Kansas City, MO, for Golden Harvest Products, Inc., Timothy J. MacKenzie, David Giesler, Bernie Brownell, Marc J. Walfish.

Arthur H. Stoup, Stephen W. Nichols, Arthur H. Stoup & Associates, P.C., Kansas City, MO, Thomas R. Rehorn, Kansas City, MO, for Terry Rabe.

Leland H. Corley, Lewis, Rice & Fingersh, Kansas City, MO, for Kurt Rabe.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Senior District Judge.

This matter is before the court on defendants' motion for summary judgment (Doc. # 51). After careful consideration of the parties' briefs and evidentiary materials, and the time having expired for the filing of a reply brief, the court is prepared to rule. For the reasons set forth below, defendants' motion is granted with respect to defendants Geisler, Brownell, and Walfish and denied with respect to defendants Golden Harvest Products, Inc. ("Golden Harvest") and MacKenzie.

*Factual Background*

For purposes of this opinion, the following is a brief summary of the material facts that are uncontroverted or deemed admitted, pursuant to Federal Rule of Civil Procedure 56 and District of Kansas Rule 56.1.

On March 31, 1995, Mr. Timothy MacKenzie, a member of Golden Harvest's Board of Directors, sent a letter to Mr. Davsko offering him a position as president and CEO of Golden Harvest. On April 3, Mr. Davsko sent a letter to Mr. MacKenzie outlining his requests for relocation expenses, the signing of an employment contract confirming any agreement between the parties, and a provision in the employment agreement for compensation if Mr. Davsko was terminated without cause. On April 4, Mr. MacKenzie sent a letter to Mr. Davsko with a modified employment offer. In this letter, Mr. MacKenzie "outlined the key financial terms" of Golden Harvest's offer and "attempted to include each of the items" he discussed and agreed upon with Mr. Davsko that morning in a telephone conversation. Mr. MacKenzie also stated in the letter that he had started "drafting an employment agreement which will formalize the terms of your employment with Golden Harvest." Mr. MacKenzie also stated in an attachment to his April 4, 1995, letter to Mr. Davsko that the employment offer included a "6% fully diluted ownership in Golden Harvest Products, Inc." and that plaintiff's equity "[o]wnership [would] be provided through stock or options at no cost to [plaintiff]." Mr. Davsko accepted Mr. MacKenzie's revised employment offer which was outlined in the April 4, 1995 letter.

Plaintiff started working for Golden Harvest on April 11, 1995. Both Mr. Davsko and Golden Harvest intended to execute a formal employment agreement, but no agreement was ever executed. On June 12, 1995, Mr. MacKenzie sent a draft of a formal employment agreement to Mr. Davsko which reflected all the terms that Mr. MacKenzie understood were a part of Mr. Davsko's employment agreement. Except for the omission of his equity ownership in Golden Harvest as part of the agreement, Mr. Davsko accepted the provisions of the June 12, 1995, draft employment agreement as reflecting the parties' agreement. No formal employment agreement was ever signed by the parties.

In June 1995, Mr. MacKenzie also sent a draft of a Management Shareholders' Agreement to Mr. Davsko. This agreement provided that Mr. Davsko could purchase 21,400 shares of Class B Common Stock of GHP Holdings, Inc. (6% of Golden Harvest's Class B Common Stock) at the per share price of $0.01. The agreement also provided for the repurchase of the stock in the event of Mr. Davsko's termination without cause at the "fair market value of the stock" as defined in the agreement. This agreement was never signed by the parties.

On August 28, 1995, Golden Harvest terminated Mr. Davsko's employment.

*Summary Judgment Standards*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. This inquiry necessarily implicates the

substantive evidentiary standard of proof that would apply at trial. *Id.* at 252, 106 S.Ct. at 2512.

Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir. 1988). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D. Kan. Rule 56.1.

In this diversity case, we ascertain and apply Kansas law with the objective that the result obtained in federal court should be the same result as in a Kansas court. *See Adams–Arapahoe School Dist. No.28–J v. GAF Corp.,* 959 F.2d 868, 870 (10th Cir.1992).

With respect to plaintiff's fraud claims under Kansas law, federal law standards for granting summary judgment apply. *See* Fed.R.Civ.P. 56. In *Anderson v. Liberty Lobby,* 477 U.S. at 252, 255, 106 S.Ct. at 2512, 2513, the United States Supreme Court held:

> we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.... Consequently, where the ... "clear and convincing" evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that the jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant.

Allegations of fraud must be proven by clear and convincing evidence. See *Rajala v. Allied Corp.,* 919 F.2d 610, 626 (10th Cir.1990), *cert. denied,* 500 U.S. 905, 111 S.Ct. 1685, 114 L.Ed.2d 80 (1991); *Sipes v. Crum,* 204 Kan. 591, 464 P.2d 1, 6 (1970). Thus, plaintiff as the nonmoving party carrying the burden of proof at trial must present sufficient evidence of a clear and convincing nature to withstand summary judgment on his fraud claims. *See Ramirez v. IBP, Inc.,* 913 F.Supp. 1421, 1430 (D.Kan.1995); *Sprague v. Peoples State Bank, Colby, Kan.,* 844 F.Supp. 662, 667 (D.Kan.1994); *All West Pet Supply Co. v. Hill's Pet Prods. Div., Colgate–Palmolive Co.,* 840 F.Supp. 1426, 1431 (D.Kan.1993).

## *Analysis*

### I. Plaintiff's Breach Of Contract Claim (Count I).

Golden Harvest first moves for summary judgment on Mr. Davsko's breach of contract claim. Golden Harvest argues that no binding contract ever existed between the parties. The Kansas Supreme Court has stated that "[w]hether parties to an informal agreement become bound prior to the drafting and execution of a contemplated formal writing is largely a question of intent on their part. The intent of the parties is to be determined by the surrounding facts and circumstances of each case." *King v. Wenger,* 219 Kan. 668, 671, 549 P.2d 986, 989 (1976) (citations omitted). "The subsequent conduct and interpretation of the parties themselves may be decisive of the ques-

tion of whether a contract has been made even though a document was contemplated and has never been executed." *Id.* at 672, 549 P.2d at 990. Here, Mr. MacKenzie conceded that his April 4, 1995, letter "represented a meeting of the minds about what the terms of [plaintiff's] compensation would be." Mr. Davsko actually was employed by Golden Harvest following the parties' agreement as expressed in Mr. MacKenzie's April 4, 1995, letter. In addition, Golden Harvest has not offered any evidence to dispute that Mr. MacKenzie's June 12, 1995, draft employment agreement given to plaintiff merely reflected the parties' prior agreement. These facts raise a disputed issue as to whether the parties had a binding agreement on April 4, 1995, despite the absence of a formal contract.

■ Golden Harvest argues that no employment agreement existed between Golden Harvest and Mr. Davsko because on April 4, 1995, both parties fully intended to formalize a written employment agreement, yet no such agreement was ever executed. This fact merely "is some evidence, not in itself conclusive," that no binding contract between the parties ever existed. *King,* 219 Kan. at 672, 549 P.2d at 990. The Kansas Supreme Court "has held that the mere intention to reduce an informal agreement to a formal writing is not of itself sufficient to show that the parties intended that until the formal writing was executed the informal agreement should be without binding force." *Id.* at 671–72, 549 P.2d at 989–90 (citing *Storts v. Martin K. Eby Constr. Co.,* 217 Kan. 34, 535 P.2d 908 (1975); *Phillips & Easton Supply Co. v. Eleanor Int'l, Inc.,* 212 Kan. 730, 512 P.2d 379 (1973); *Miles v. City of Wichita,* 175 Kan. 723, 267 P.2d 943 (1954)).

■ Golden Harvest also claims that it should be granted summary judgment on Mr. Davsko's claim for severance pay because there was no provision for severance pay in the parties' April 4, 1995 letter agreement. Viewing the evidence in the light most favorable to plaintiff, the provision for severance pay in the June 12, 1995 draft employment agreement merely reflected the terms of the parties' previous agreement. Mr. Davsko specifically requested severance pay in his April 3, 1995 letter to Mr. MacKenzie. Mr. MacKenzie testified that the June 12, 1995 draft agreement reflected what he believed were the terms of the parties' agreement at the time Mr. Davsko was hired. Although plaintiff's evidence of a severance pay provision as part of the parties' agreement is quite weak, Golden Harvest has not offered any rebuttal evidence on this point. Golden Harvest simply has not presented sufficient evidence to establish that the termination provision was not part of the discussions between Mr. MacKenzie and Mr. Davsko and included as part of the parties' agreement despite the absence of a formal written agreement.

For the above reasons, defendants' motion for summary judgment on plaintiff's breach of contract claim is denied.

## II. Plaintiff's Compliance With Rule 9(b).

■ Rule 9(b) of the Federal Rules of Civil Procedure requires that all averments of fraud shall be stated with particularity. Defendants argue that plaintiff's complaint fails to set forth the specific fraudulent misrepresentations and the circumstances under which those representations were made. Plaintiff states in Count II of his complaint that Mr. MacKenzie, on behalf of Golden Harvest, represented to Mr. Davsko that he would be paid the salary, vacation and severance benefits and 6% equity stock ownership in Golden Harvest as set forth in Mr. MacKenzie's letters of March 31 and April 4, 1995. Plaintiff's complaint provides sufficient notice to defendants of the alleged representations and the circumstances under which those representations were made.

■ Defendants also contend, with respect to counts III and IV relating to plaintiff's state and federal securities law claims, that plaintiff has failed to plead allegations which include the time, place, and content of the misrepresentation, the fact misrepresented, and what was obtained or given up as a consequence of the fraud. *See Guidry v. Bank of LaPlace,* 954 F.2d 278, 288 (5th Cir.1992). The court finds that plaintiff's complaint provides defendants sufficient notice of all of these particular allegations.

In addition, the court finds that defendants have waived their objection under rule 9(b). The requirement that fraud shall be stated with particularity primarily is to allow the defendant to prepare an adequate responsive pleading. *See Todaro v. Orbit Int'l Travel, Ltd.*, 755 F.Supp. 1229, 1234 (S.D.N.Y.1991); *United Nat'l Records, Inc. v. MCA, Inc.*, 609 F.Supp. 33, 38 (N.D.Ill. 1984). By analogy to the time requirements for pleading defenses under rule 12, a rule 9(b) objection is waived unless made as a separate motion prior to or concurrent with the filing of a responsive pleading. *See Todaro*, 755 F.Supp. at 1234; *MCA*, 609 F.Supp. at 38–39. Here, defendants answered plaintiff's complaint without raising any objection under rule 9(b). Defendants cannot argue almost a year later that plaintiff failed to plead fraud with particularity.

### III. Individual Directors' Liability.

Plaintiff claims that individual defendants Geisler, Brownell, Walfish, Terry Rabe, and Kert Rabe are personally liable under counts II, III, and IV because (1) they delegated to Mr. MacKenzie the authority to deal with Mr. Davsko and (2) they discussed some of the representations Mr. MacKenzie made to Mr. Davsko.[1] Plaintiff has not produced sufficient clear and convincing evidence for a jury to find defendants Geisler, Brownell, or Walfish liable for the alleged fraudulent misrepresentation and omissions made by Mr. MacKenzie in negotiating with Mr. Davsko.

The court finds that the individual directors of Golden Harvest cannot be held liable based on their status as directors and choice of Mr. MacKenzie as negotiator with Mr. Davsko regarding the terms of his employment. A corporation's directors generally are not liable for the torts of the corporation or its agents. *See McFeeters v. Renollet*, 210 Kan. 158, 161, 500 P.2d 47, 50 (1972); *see also* 3A W. Fletcher, Cyclopedia

of the Law of Private Corporations § 1137 at 278; *Teledyne Indus., Inc. v. Eon Corp.*, 401 F.Supp. 729, 736–37 (S.D.N.Y.1975), *aff'd*, 546 F.2d 495 (2d Cir.1976). Of course, a director can be liable if he actually commits or participates in the commission of a tort. *See Kerns v. G.A.C., Inc.*, 255 Kan. 264, 274, 875 P.2d 949, 957 (1994); *McFeeters*, 210 Kan. at 161, 500 P.2d at 50. The key issue for determining the liability of a director for acts of fraud is whether he willfully and personally participated in the alleged fraudulent conduct. *See Speer v. Dighton Grain, Inc.*, 229 Kan. 272, 281, 624 P.2d 952, 958–59 (1981); *McFeeters*, 210 Kan. at 161–62, 500 P.2d at 50. A director is not personally liable for torts committed by other directors of the corporation. *See Jones v. Lewis*, No. 86–1547, 1988 WL 163026, at *3 (D. Kan. June 13, 1988) ("corporate directors are not liable in tort for the tortious conduct of the corporation or for torts committed by other directors or officers; directors incur liability only when they personally commit torts.") (citing *Kansas Comm. on Civil Rights v. Service Envelope Co.*, 233 Kan. 20, 26, 660 P.2d 549 (1983)); 3A W. Fletcher, Cyclopedia of the Law of Private Corporations § 1150 at 344 ("[A] director or other corporate officer is not liable for false statements made by another officer in which the former did not participate nor authorize nor sanction. The fraud must be brought home to him individually, for the reason that one director is not the agent of another."). Therefore, the court concludes that defendants Geisler, Brownell, and Walfish cannot be held liable for Mr. MacKenzie's alleged tortious acts based solely on their choice of him as negotiator.

Plaintiff also claims that Mr. Geisler, Mr. Walfish, and Mr. Brownell discussed with Mr. MacKenzie the representations made to Mr. Davsko and specifically endorsed the representation relating to his equity interest in Golden Harvest. The court

---

1. Individual defendants Terry and Kert Rabe have not filed a motion for summary judgment. Thus, the court's analysis in this section will focus on the conduct of Mr. Geisler, Mr. Brownell, and Mr. Walfish. The court notes that unless plaintiff has additional evidence implicating defendants Terry and Kert Rabe, it is highly unlikely plaintiff can make out a submissible case against these two individual defendants. Given the similarity between the legal issues involved in the instant motion and those likely to be raised by defendants Terry and Kert Rabe, the court will grant defendants Terry and Kert Rabe leave to file motions for summary judgment on or before May 12, 1997.

has carefully reviewed the factual record and finds that plaintiff's assertions are inadequately supported. Plaintiff's mere suspicions of the other directors' involvement are insufficient to defeat a summary judgment motion. *See Conaway,* 853 F.2d at 793. Mr. Geisler testified that the directors discussed Mr. Davsko's requests in his April 3, 1995 letter which did not include the 6% equity interest proposal. In fact, Mr. Geisler and Mr. Brownell testified that they understood that there was a length of service requirement before Mr. Davsko could obtain his equity interest, which is contrary to Mr. MacKenzie's alleged representation. Mr. Geisler stated that he did not know the content of Mr. MacKenzie's discussions with Mr. Davsko regarding a length of service condition. In addition, Mr. Brownell testified that the directors discussed only the terms of Mr. Davsko's employment in a general sense. The Board of Directors gave Mr. MacKenzie only general guidelines and parameters for negotiating with Mr. Davsko. Mr. Walfish also testified that he did not recall seeing the April 4, 1995 letter before it was sent to Mr. Davsko. There simply is no record evidence that the directors reviewed and approved the March 31 and April 4 letters or discussed specifically what information would or should be disclosed to Mr. Davsko. Finally, the court notes that plaintiff conceded in his deposition that his claims against Golden Harvest's directors, except for Mr. Mac-Kenzie, are based solely on their status as directors of the corporation.

Plaintiff's reliance on *Kerns, supra,* for imposing liability on all of Golden Harvest's directors is misplaced. In *Kerns,* the plaintiff was injured when he fell into a closed swimming pool at a mobile home park. Plaintiff sued the corporation who owned the park and the individuals, agents of the corporation, who operated the park. The plaintiff specifically alleged that the individual defendants were liable because "they personally committed the wrongdoing." *Id.* at 274, 875 P.2d at 957 The court found that the individual defendants could be held liable because they "had either assumed the duty or assigned their duty" to operate the park. *Id.* at 275, 875 P.2d at 958. The court simply did not address a director's liability for another

director's tortious conduct. We find that the principles stated by the Kansas Supreme Court in *McFeeters* and *Speer,* discussed above, govern our analysis of this case.

Plaintiff also cites *Equity Investors, Inc. v. Ammest Group, Inc.,* 1 Kan.App.2d 276, 563 P.2d 531 (1977), for the proposition that Golden Harvest's directors are liable for MacKenzie's alleged misrepresentations because they ratified and adopted those promises by agreeing to hire Mr. Davsko and approving Mr. MacKenzie as negotiator for Golden Harvest. The plaintiff in *Equity Investors* brought suit against only the corporation Ammest Group. Ammest Group's individual directors were not parties to the action. The issue on appeal was whether the corporation could be held liable based on the directors' conduct which tended to establish that one of its directors (Ford) had authority to deal on behalf of the corporation. We find nothing in *Equity Investors* which addresses a director's liability for the tortious conduct of another director.

In sum, plaintiff has not presented clear and convincing evidence of any fraudulent conduct by defendants Geisler, Brownell, or Walfish. For all of the above reasons, the court grants summary judgment in favor of Mr. Geisler, Mr. Brownell, and Mr. Walfish.

## IV. Plaintiff's Common Law Fraud Claims (Count II).

Plaintiff claims that defendants fraudulently promised him a 6% equity interest in Golden Harvest at no cost to plaintiff as part of his compensation. Plaintiff also alleges that defendants fraudulently concealed that (1) plaintiff's 6% equity interest would be for class B non-voting common stock and (2) plaintiff would not receive the fair market value of his equity interest even if he was terminated without cause. The court will address defendants' arguments separately with respect to each claim of fraud.

### A. *Fraudulent Promise Of Future Event.*

To prevail on a claim of fraudulent misrepresentation, a plaintiff must show by clear and convincing evidence: (1) an untrue statement of material fact; (2) known

to be untrue by the person making it; (3) made with an intent to deceive or recklessly made with disregard for its truthfulness; (4) the justifiable reliance of plaintiff on the statement's truthfulness; and (5) injury as a result of said reliance. *See Whitten v. Farmland Indus., Inc.,* 759 F.Supp. 1522, 1542 (D.Kan.1991) (citing *Slaymaker v. Westgate State Bank,* 241 Kan. 525, 531, 739 P.2d 444, 450 (1987); *Scott v. Strickland,* 10 Kan. App.2d 14, 19–20, 691 P.2d 45, 51 (1984)); *Rajala, supra.* "To be actionable, a misrepresentation must relate to a pre-existing or present fact; statements or promises about future occurrences are not actionable." *Flight Concepts Ltd. Partnership v. Boeing Co.,* 38 F.3d 1152, 1157 (10th Cir.1994) (citing *Edwards v. Phillips Petroleum Co.,* 187 Kan. 656, 659, 360 P.2d 23, 26 (1961)). "An exception exists where evidence establishes that, at the time the promise as to future events was made, the promisor did not intend to perform the promised action." *Flight Concepts,* 38 F.3d at 1157 (citing *Edwards,* 187 Kan. at 660, 360 P.2d at 26). Where a claim of fraud is predicated on a promise or statement concerning future events, there must be more than mere nonperformance to show fraudulent intent. *See Whitten,* 759 F.Supp. at 1542 (citing *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.,* 226 Kan. 70, 78, 596 P.2d 816, 824 (1979)). "The gravamen of such a claim is the existence of other circumstances of substantial character which support an inference of wrongful intent at the time of making the representation." *Whitten,* 759 F.Supp. at 1542 (citing *Young v. Hecht,* 3 Kan.App.2d 510, 515, 597 P.2d 682, 688 (1979) (emphasis added)); *see Anderson v. Heartland Oil & Gas, Inc.,* 249 Kan. 458, 469, 819 P.2d 1192, 1200 (1991), *cert. denied,* 504 U.S. 912, 112 S.Ct. 1946, 118 L.Ed.2d 550 (1992).

■ Defendants first argue that plaintiff's fraud claim must fail because plaintiff conceded in his deposition that Mr. MacKenzie's statements were not false. Counsel for defendants asked plaintiff: "Did [Mr. MacKenzie] state anything prior to your employment, your hire date at the company, that was a lie?" Plaintiff answered "No." Plaintiff responds that his deposition testimony refers to whether he considered Mr. Mac-

Kenzie's statements to be true at the time Mr. MacKenzie made the statements, which establishes plaintiff's reliance on the representations. Viewing the evidence in the light most favorable to plaintiff, the court finds that the referenced testimony is vague and could be interpreted as applying only to when the representation was made. Plaintiff's testimony simply does not prove that Mr. MacKenzie's representations were not in fact false.

Defendants also contend that plaintiff's fraud claim fails because plaintiff has no evidence that at the time he entered into his employment with Golden Harvest that it did not intend to live up to its agreements with him. At least two Golden Harvest directors testified, however, that they intended that Mr. Davsko would be required to fulfill a length of service condition before being entitled to a 6% equity interest in Golden Harvest. This condition apparently was discussed among Golden Harvest's directors prior to March 31, 1995. No such condition, however, was contained in either the March 31 or April 4 letters from Mr. MacKenzie to Mr. Davsko. The fact that two directors testified to additional conditions for Mr. Davsko to obtain his equity interest raises an issue of fact as to whether Golden Harvest intended to live up to the terms of the April 4, 1995 agreement with Mr. Davsko.

### B. *Fraud By Silence.*

■ To establish fraud by silence, a plaintiff must show by clear and convincing evidence: (1) that the defendant had knowledge of material facts which plaintiff did not have and which plaintiff could not have discovered by the exercise of reasonable diligence; (2) that the defendant was under an obligation to communicate the material facts to the plaintiff; (3) that defendant intentionally failed to communicate to plaintiff the material facts; (4) that plaintiff justifiably relied on defendant to communicate the material facts to plaintiff; and (5) that plaintiff sustained damages as a result of defendant's failure to communicate the material facts to plaintiff. *Ensminger v. Terminix Int'l Co.,* 102 F.3d 1571, 1573–74 (10th Cir.1996); *see OMI Holdings, Inc. v. Howell,* 260 Kan. 305,

344–45, 918 P.2d 1274, 1299 (1996); *Flight Concepts,* 38 F.3d at 1158.

One cannot be held liable for a failure to disclose absent a duty to do so. *See DuShane v. Union Nat'l Bank,* 223 Kan. 755, 760, 576 P.2d 674, 678–79 (1978). A duty to disclose depends upon the relationship between the parties when the suppression or concealment of information is alleged to have occurred. *Id.* at 760, 576 P.2d at 679. Generally, a duty to disclose may be found either (1) where there is a disparity of bargaining power or expertise between two parties to a contract or (2) where a fiduciary relationship exists. *See id.* at 760, 576 P.2d at 679 (citing *Merchant v. Foreman,* 182 Kan. 550, 322 P.2d 740 (1958); *Anderson v. Heasley,* 95 Kan. 572, 148 P. 738 (1915)).

The Kansas Supreme Court has set forth the general principles governing fraudulent concealment:

> [w]here one party to a contract or transaction has superior knowledge, or knowledge which is not within the fair and reasonable reach of the other party and which he could not discover by the exercise of reasonable diligence, or means of knowledge which are not open to both parties alike, he is under a legal obligation to speak, and his silence constitutes fraud, especially when the other party relies upon him to communicate to him the true state of facts to enable him to judge of the expedience of the bargain.

*Wolf v. Brungardt,* 215 Kan. 272, 282, 524 P.2d 726, 736 (1974); *see Lynn v. Taylor,* 7 Kan.App.2d 369, 371, 642 P.2d 131, 134 (1982).

Apart from the alleged admissions made by plaintiff in his deposition, discussed in part III. A., *supra,* defendants have not offered any further evidence in support of their motion for summary judgment on plaintiff's claims of fraud based on defendants' silence. Given defendants' superior knowledge as to the actual terms of its management equity program, a jury reasonably could find that defendants had a duty to disclose certain information regarding its equity program to Mr. Davsko. The court accordingly will deny defendants' motion for summary judgment on plaintiff's common law fraud claims.

## V. Plaintiff's State Securities Law Claims (Count III).

Mr. Davsko seeks recovery under Kansas law based on defendants' alleged offer of a security by means of an untrue statement of a material fact or an omission to state a material fact. *See* K.S.A. §§ 17–1253, 17–1268. Based on plaintiff's same alleged admissions in his deposition, defendants contend that plaintiff has not established that defendants made any untrue statement or material omission. As explained above, plaintiff has presented sufficient evidence to raise an issue of material fact on these points. The court accordingly will deny defendants' motion for summary judgment on plaintiff's state securities law claims.

## VI. Plaintiff's Federal Securities Law Claims (Count IV).

Mr. Davsko also seeks recovery under the federal securities law based on defendants' alleged fraudulent promise to provide Mr. Davsko a 6% equity interest if he started working for Golden Harvest. Defendants argue that plaintiff's federal securities law claim fails because he has not produced any evidence that defendants did not intend to perform or knew that they could not perform. Again, at least some of the Golden Harvest directors intended and discussed with the other directors that Mr. Davsko would be required to fulfill a length of service condition before receiving his 6% equity interest. This requirement was not expressly contained in either letter from Mr. MacKenzie to Mr. Davsko. Defendants have offered no evidence to refute these facts. The court finds that plaintiff has presented sufficient evidence to preclude summary judgment on his federal securities law claim.

Consistent with the parties' representations reflected in the pretrial order, any requests for the appointment of a mediator should be directed to Magistrate Judge Rushfelt.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment

(Doc. # 51) is granted with respect to plaintiff's claims against defendants Geisler, Brownell, and Walfish. Defendants' motion is denied in all other respects.

IT IS FURTHER ORDERED that defendants Terry and Kert Rabe are granted leave to file a motion for summary judgment on or before May 12, 1997.